[Crim. No. 23510. Aug. 23, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD EINAR OLSEN, Defendant and Appellant.

**COUNSEL**

Gregory H. Saldivar, under appointment by the Supreme Court, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Kristofer Jorstad, Gloria F. DeHart and Mary A. Roth, Deputy Attorneys General, for Plaintiff and Respondent.

Christopher G. Money, District Attorney (San Luis Obispo), and Robert Rabe, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

BIRD, C. J.—Is a reasonable mistake as to the victim's age a defense to a charge of lewd or lascivious conduct with a child under the age of 14 years (Pen. Code, § 288, subd. (a)[1])?

I.

In early June 1981, Shawn M. was 13 years and 10 months old. At that time, her parents were entertaining out-of-town guests. Since one of the visitors was using Shawn's bedroom, Shawn suggested that she sleep in her family's camper trailer which was parked in the driveway in front of the house. Shawn's parents agreed to this arrangement on the condition that she keep the windows shut and the door locked.

On the night of June 3rd, Shawn's father, who is partially blind, was awakened by the barking of the family's three dogs. He went out the front door and heard male voices coming from the trailer. Mr. M. opened the door of the trailer and heard somebody remark about his presence. He then heard a male voice say, "Let's get the hell out of here."

Mr. M. could see three persons on the bed. One of the males, appellant Edward Olsen, jumped off the bed and tried to get out the door. Mr. M. wrestled with him and held him around the throat. Appellant called for help. The other male, James Garcia, stabbed Mr. M. in the right shoulder. Both appellant and Garcia then ran away.

At trial, Shawn testified to the following events. On her third night in the trailer, she locked the door as instructed by her parents. She then fell asleep, but was awakened by appellant Olsen who was knocking on the window and asking to be let in. Shawn said nothing and appellant left. Approximately a half-hour later, Garcia came up to the window and asked if he could enter. Shawn did not respond so he left. Shortly thereafter, appellant returned and again asked to be allowed in. Shawn did not answer. After both appellant and Garcia left, Shawn went to sleep.

---

[1]Section 288, subdivision (a) provides in relevant part: "Any person who shall willfully and lewdly commit any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six, or eight years."

All statutory references are to the Penal Code unless otherwise noted.

Shawn was then awakened by the sound of barking dogs and by Garcia, who had a knife by her side and his hand over her mouth.[2] Garcia called to appellant to come in, and appellant entered the trailer.

Garcia told Shawn to let appellant "make love" to her, or he—Garcia—would stab her. Garcia gave the knife to appellant who held it to Shawn's neck and then gave it back to Garcia. Shawn asked Garcia to put the knife away and he complied.

Appellant and Garcia then removed Shawn's nightgown and underpants. Garcia told her again to let appellant "make love" to her. Shawn refused. Garcia then took out his knife. Appellant proceeded to have sexual intercourse with Shawn for about 15 minutes. During this time, Garcia knelt on the bed and said nothing. While appellant was still having intercourse with Shawn, her father entered the trailer. Mr. M. grabbed appellant as he was trying to leave, and Garcia stabbed Mr. M. in order to free appellant.

Shawn testified that she knew Garcia "pretty well" and had known him for approximately one year. She had last seen him about four days before the incident. She also testified that she was very good friends "off and on" with appellant and that during one three-month period she spent almost every day at appellant's house. At the time of the incident, however, Shawn considered Garcia her boyfriend.[3]

Finally, Shawn admitted that she told both Garcia and appellant that she was over 16 years old. She also conceded that she looked as if she were over 16.[4]

Garcia testified to quite a different set of events. He first met Shawn in the summer of 1980 when she introduced herself to him. On the afternoon of June 2, 1981—the day before the offense—Shawn invited him to spend the night in the trailer with her so that they could have sex. He and Shawn engaged in sexual intercourse about four times that evening. Shawn invited Garcia to come back the following night at midnight.

The next night, after two unsuccessful attempts to enter the trailer, Garcia and appellant were told by Shawn to return at midnight. Garcia knocked on

[2]Although Shawn testified she locked the trailer door, she failed to explain how Garcia entered the trailer. A subsequent examination of the trailer revealed that there were no signs of a forced entry.

[3]Shawn admitted that she had engaged in intercourse before the night of June 3rd, but denied having any such prior experience with either Garcia or appellant. However, she did admit having had sexual relations, short of intercourse, with both of them in the past.

[4]Patricia Alvarez, a police officer, testified that appellant told her that he thought Shawn was 17.

the trailer door. Shawn, wearing only a pair of panties, opened the door and invited them in. She told them she wanted to "take both [of them] on." She then told Garcia that she wanted "to make love" with appellant first. When Mr. M. entered the trailer, appellant was on top of Shawn. Garcia denied threatening Shawn with a knife, taking her nightgown off, breaking into the trailer or forcing her to have sex with them.[5]

At the conclusion of the trial, the court found[6] Garcia and appellant guilty of violating section 288, subdivision (a).[7] In reaching its decision, the court rejected defense counsel's argument that a good faith belief as to the age of the victim was a defense to the section 288 charge. Appellant was sentenced to the lower term of three years in state prison. This appeal followed.[8]

 Appellant's sole contention on appeal is that a good faith, reasonable mistake of age is a defense to a section 288 charge.

## II.

The language of section 288 is silent as to whether a good faith, reasonable mistake as to the victim's age constitutes a defense to a charge under that statute. Resort is thus made to judicial decisions discussing the defense. Although this court has not considered the question, it has recognized a mistake of age defense in other contexts.

Twenty years ago, this court in *People* v. *Hernandez* (1964) 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092], overruled estab-

---

[5]Appellant's sister corroborated Shawn's testimony that Shawn made daily visits to the Olsen home during a three-month period. She testified that during these visits Shawn and appellant would go into the latter's bedroom and close the door. On one occasion, appellant's sister saw the two in bed together. On several occasions, his sister entered the bedroom after Shawn had left and noticed the bedcovers "messed up" and an odor which she associated with sex.

Appellant's next-door neighbor testified that he often encountered appellant and Shawn emerging from appellant's bedroom in the morning.

Joseph W., Garcia's 16-year-old friend who also knew Shawn, testified that he and Chuck A., a 15-year-old neighbor, had simultaneously gone to bed with Shawn on two occasions. On one of the occasions, Chuck's father caught them in bed and ordered Shawn out of the house. Both Chuck and his father corroborated Joseph's testimony.

[6]Appellant had waived jury trial on the condition that if convicted, he would be sentenced to no more than five years in state prison.

[7]Garcia was also found guilty of assault with a deadly weapon (§ 245, subd. (a)) with infliction of great bodily injury. (§ 12022.7.) Both Garcia and appellant were found not guilty of burglary (§ 459), forcible rape (§ 261, subd. (2)), and lewd or lascivious acts upon a child under the age of 14 by use of force (§ 288, subd. (b)). Appellant was also found not guilty of assault with a deadly weapon. (§ 245, subd. (a).)

[8]Garcia did not appeal.

lished precedent,[9] and held that an accused's good faith, reasonable belief that a victim was 18 years or more of age was a defense to a charge of statutory rape. (*Id.*, at p. 536.)[10]

In *Hernandez,* the accused was charged with statutory rape[11] of a girl who was 17 years and 9 months old, and who had voluntarily engaged in an act of sexual intercourse. The trial court refused to allow the accused to present evidence of his good faith, reasonable belief that the prosecutrix was 18 or over. (61 Cal.2d at p. 530.) On appeal, this court held it reversible error to exclude such evidence. (*Id.*, at pp. 535-536.)

The *Hernandez* court acknowledged that an accused possesses criminal intent when he acts without a belief that his victim is 18 or over. However, the court determined that if one engages in sexual intercourse with a female and reasonably believes she is 18 or over, then the essential element of criminal intent is missing. (*Id.*, at pp. 534-536.)

Relying on sections 20[12] and 26[13] and on *People* v. *Vogel* (1956) 46 Cal.2d 798 [299 P.2d 850], the court noted that it had recently "given recognition to the legislative declarations" in those two sections when it held in *Vogel* that a good faith belief that a previous marriage had been terminated was a valid defense to a charge of bigamy. (*Hernandez, supra,* 61 Cal.2d at p. 535.) The court stated, "the reluctance to accord to a charge of statutory rape the defense of a lack of criminal intent has no greater justification than in the case of other statutory crimes [such as bigamy],

---

[9]*People* v. *Ratz* (1896) 115 Cal. 132 [46 P. 915] (accused's good faith, mistaken belief as to the victim's age is no defense to statutory rape) and *People* v. *Griffin* (1897) 117 Cal. 583 [49 P. 711] (accused's unawareness as to the victim's mental condition which makes her incapable of giving legal consent is no defense to rape).

[10]One commentator believes that *Hernandez* marked a clear break from the "universally accepted view of the courts in this country." (Annot., Mistake or Lack of Information as to Victim's Age as Defense to Statutory Rape (1966) 8 A.L.R.3d 1100, 1102-1105, and cases cited.) The view that mistake of age is not a defense to a charge of statutory rape still prevails in the overwhelming majority of jurisdictions. (See *ibid.*, and later cases (1983 pocket supp.) pp. 72-73.)

[11]When *Hernandez* was decided, statutory rape was defined in section 261, subdivision 1. A 1970 amendment recodified subdivision 1 as section 261.5 (unlawful sexual intercourse). (Stats. 1970, ch. 1301, §§ 1 & 2, pp. 2405-2406.)

Section 261.5 provides: "Unlawful sexual intercourse is an act of sexual intercourse accomplished with a female not the wife of the perpetrator, where the female is under the age of 18 years."

[12]Section 20 provides: "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence."

[13]Section 26 provides in relevant part: "All persons are capable of committing crimes except those belonging to the following classes: . . . [¶] Three—Persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent."

where the Legislature has made identical provision with respect to intent." (*Ibid.*) Thus, "it cannot be a greater wrong to entertain a bona fide but erroneous belief that a valid consent to an act of sexual intercourse has been obtained." (*Ibid.*) The court went on to hold that a charge of statutory rape is defensible where a criminal intent is lacking unless there is a "legislative direction otherwise." (*Id.*, at p. 536.)

The *Hernandez* court, however, cautioned that its holding was not "indicative of a withdrawal from the sound policy that it is in the public interest to protect the sexually naive female from exploitation. No responsible person would hesitate to condemn as untenable a claimed good faith belief in the age of consent of an 'infant' female whose obviously tender years preclude the existence of reasonable grounds for that belief." (*Ibid.*) The court then concluded that there was nothing to indicate that "the purposes of the law [could] be better served by foreclosing the defense of a lack of intent." (*Ibid.*)

One Court of Appeal has declined to apply *Hernandez* in an analogous context. In *People* v. *Lopez* (1969) 271 Cal.App.2d 754, 760-762 [77 Cal.Rptr. 59], certiorari denied, 396 U.S. 935 [24 L.Ed.2d 234, 90 S.Ct. 278], the court refused to recognize a reasonable mistake of age defense to a charge of offering or furnishing marijuana to a minor (former Health & Saf. Code, § 11532). The court noted that the act of furnishing marijuana is criminal regardless of the age of the recipient and that furnishing marijuana to a minor simply yields a greater punishment than when the substance is furnished to an adult. (*Lopez, supra,* 271 Cal.App.2d at pp. 760-761.) "[A] mistake of fact relating only to the gravity of an offense will not shield a deliberate offender from the full consequences of the wrong actually committed. [Citations.]" (*Ibid.*)[14]

In deciding whether to apply the philosophy of *Hernandez* to the offense of lewd or lascivious conduct with a child under the age of 14, this court is guided by decisions of the Courts of Appeal. The three post-*Hernandez* Court of Appeal decisions which have considered the issue have refused to

---

[14]On the other hand, *Hernandez* has been extended to some offenses involving children. For example, in *People* v. *Atchison* (1978) 22 Cal.3d 181 [148 Cal.Rptr. 881, 583 P.2d 735], this court apparently concluded that a reasonable mistake as to the victim's age was a defense to the charges of annoying or molesting a child under the age of 18 (§ 647a) and contributing to the delinquency of a child under the age of 18. (§ 272.) In *People* v. *Peterson* (1981) 126 Cal.App.3d 396 [178 Cal.Rptr. 734], the Court of Appeal held the defense applicable to a charge of oral copulation with a person under 18. (§ 288a, subd. (b)(1).) Most recently, a mistake of age defense was recognized in a case involving the inducement of a minor to use a narcotic drug (Health & Saf. Code, § 11353) and marijuana (Health & Saf. Code, § 11361). (*People* v. *Goldstein* (1982) 130 Cal.App.3d 1024, 1035-1037 [182 Cal.Rptr. 207].) It is significant for our purposes that none of these offenses involved children under the age of 14.

apply *Hernandez.*[15] (*People* v. *Gutierrez* (1978) 80 Cal.App.3d 829, 833-836 [145 Cal.Rptr. 823]; *People* v. *Toliver* (1969) 270 Cal.App.2d 492, 494-496 [75 Cal.Rptr. 819], cert. den., 396 U.S. 895 [24 L.Ed.2d 172, 90 S.Ct. 193]; *People* v. *Tober* (1966) 241 Cal.App.2d 66, 72-73 [50 Cal.Rptr. 228].)

In *People* v. *Tober, supra,* 241 Cal.App.2d 66, 67, the accused was convicted of lewd or lascivious acts on the body of a 10-year-old child. On appeal, the court rejected the premise that lewd or lascivious acts on a 10-year-old child "may be indulged in under a claimed good faith belief that the child is either an adult or has reached the age of 14 years." (*Id.*, at p. 73.) The Court of Appeal explained that "[t]he very refusal to distinguish between a child of tender years and an adult may be said to be characteristic of some of those who engage in the sort of conduct of which defendant has been convicted." (*Ibid.*) The court refused to apply *Hernandez* to section 288 cases, relying on that court's caution that a good faith, mistaken belief as to age is untenable when the victim involved is of "'tender years.'" (*Ibid.*, quoting *Hernandez, supra,* 61 Cal.2d at p. 536.)

*People* v. *Toliver, supra,* 270 Cal.App.2d 492, also rejected the *Hernandez* rule in the section 288 context. The court first observed that "the philosophy applying to violations of [section 288] is entirely different from that applying to [unlawful sexual intercourse]." (270 Cal.App.2d at p. 495.)

As *Toliver* explained, *Hernandez* "in effect considered that section 288 is for protection of infants or children as to whom persons commit lewd and lascivious acts at their peril." (270 Cal.App.2d at p. 496.) *Hernandez* points out that consent can be an element of statutory rape, since a male may reasonably believe that a female is older than 18 and, therefore, can consent to an act of intercourse. (*Ibid.*) "On the other hand, [a] violation of section 288 does not involve consent of any sort, thereby placing the public policies underlying it and statutory rape on different footings." (*Ibid.*) The court also found it significant that the Legislature provided harsher penalties for violating section 288 than for statutory rape. (*Ibid.*)

The *Toliver* court noted that "[u]nder the Roman and common laws, childhood was considered to exist until puberty, which was determined to be at age 14. . . ." (270 Cal.App.2d at p. 496, citation omitted.) While

---

[15]There appears to be only one pre-*Hernandez* section 288 case which has considered the issue. In *People* v. *Clark* (1953) 117 Cal.App.2d 134, 142 [255 P.2d 79], the trial court instructed the jury that it was immaterial that an accused believed that the victim was over 14. Without determining whether a reasonable, but mistaken belief as to age was a defense to a section 288 charge, the Court of Appeal simply concluded that there was no prejudice under the circumstances. (*Id.*, at p. 143.)

recognizing that some females reach puberty below the age of 14, the court noted that there was "no reason why the distinction between a child and a more mature person should not continue to be held at that age." (*Ibid.*)

Another justification for its conclusion was found in a draft of the Penal Code Revision Project. (*Ibid.*) That project had proposed that a reasonable belief that a child is 14 or older is no defense to sex offenses where the crime involves a victim younger than 14. (Joint Legis. Com. for Revision of Pen. Code (Pen. Code Revision Proj. Ten. Draft No. 1, Sept. 1967) § 1600, subd. (4),[16] p. 61.)

Finally, there is *People* v. *Gutierrez, supra,* 80 Cal.App.3d 829, the most recent California decision rejecting the reasonable mistake of age defense to a charge of lewd or lascivious conduct. The *Gutierrez* court relied heavily on the principles articulated in *Toliver* and *Tober.* "[T]he public policy considerations relied upon in [those cases] have not ceased to exist and their rationale is still sound . . . ." (*Gutierrez, supra,* 80 Cal.App.3d at p. 835.)

The reasoning of the *Tober, Toliver* and *Gutierrez* courts is persuasive. There exists a strong public policy to protect children of tender years. As *Gutierrez* indicates, section 288 was enacted for that very purpose. (See *id.,* at p. 835; see also *People* v. *Kingston* (1974) 44 Cal.App.3d 629, 635 [118 Cal.Rptr. 896].) Furthermore, even the *Hernandez* court recognized this important policy when it made clear that it did not contemplate applying the mistake of age defense in cases where the victim is of "tender years." (*Hernandez, supra,* 61 Cal.2d at p. 536; see *ante,* at p. 644.)

Moreover, other language in *Hernandez* strongly suggests that a reasonable mistake as to age would not be a defense to a section 288 charge. As *Hernandez* noted, when *People* v. *Ratz, supra,* 115 Cal. 132 was decided, an accused could be convicted of statutory rape only if the victim were under 14. *Hernandez* also found it "noteworthy that the purpose of the rule [announced in *Ratz*] was to afford protection to young females therein described as 'infants.'" (*Hernandez, supra,* 61 Cal.2d at p. 533.) Thus, an "infant" at the time of *Ratz* was any child under 14. The *Hernandez* court's use of that term, therefore, evidenced a belief that a mistake of age defense would be untenable when the offense involved a child that young.

---

[16]Subdivision (4) provided: "Whenever in this chapter the criminality of conduct depends on a child's being below the age of fourteen, it is no defense that the actor reasonably believed the child to be fourteen or older. Whenever in this chapter the criminality of conduct depends on a child's being below a specified age older than fourteen it is an affirmative defense that the actor reasonably believed the child to be of that age or above."
The tentative draft was never enacted into law.

The language in *Hernandez,* together with the reasoning in *Tober, Toliver* and *Gutierrez,* compel the conclusion that a reasonable mistake as to the victim's age is not a defense to a section 288 charge.

This conclusion is supported by the Legislature's enactment of section 1203.066. (Stats. 1981, ch. 1064, § 4, pp. 4095-4096.) Subdivision (a)(3) of that statute renders certain individuals convicted of lewd or lascivious conduct who "honestly and reasonably believed the victim was 14 years old or older" eligible for probation.[17] The Legislature's enactment of section 1203.066, subdivision (a)(3), in the face of a corresponding failure to amend section 288 to provide for a reasonable mistake of age defense,[18] strongly indicates that the Legislature did not intend such a defense to a section 288 charge. ▪▪ ▪▪▪▪ (See *Estate of McDill* (1975) 14 Cal.3d 831, 837-838 [122 Cal.Rptr. 754, 537 P.2d 874].[19]) ▪▪ To recognize such a defense would render section 1203.066, subdivision (a)(3) a nullity, since the question of probation for individuals who had entertained an honest and reasonable belief in the victim's age would never arise. ▪▪ It is well established that courts are "exceedingly reluctant to attach an interpretation to a particular statute which renders other existing provisions unnecessary." (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081].)

▪▪ Other legislative provisions also support the holding that a reasonable mistake of age is not a defense to a section 288 charge. Time and again, the Legislature has recognized that persons under 14 years of age are in need of special protection. This is particularly evident from the provisions of section 26. That statute creates a rebuttable presumption that children under the age of 14 are incapable of knowing the wrongfulness of their actions and, therefore, are incapable of committing a crime.[20] A fortiori,

---

[17]Section 1203.066, subdivision (a)(3) provides: "(a) Notwithstanding the provisions of Section 1203, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, nor shall a finding bringing the defendant within the provision of this section be stricken pursuant to Section 1385 for any of the following persons: . . . [¶] (3) A person convicted of a violation of Section 288 and who was a stranger to the child victim or made friends with the child victim for the purpose of committing an act in violation of Section 288, unless the defendant honestly and reasonably believed the victim was 14 years old or older."

[18]In the same legislation which enacted section 1203.066, section 288 was amended to increase the penalty for a violation of that statute. (Stats. 1981, ch. 1064, § 1, p. 4093.)

[19]"It is assumed that the Legislature has in mind existing laws when it passes a statute. [Citations.] 'The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended.' [Citations.]" (*Estate of McDill, supra,* 14 Cal.3d at pp. 837-838.)

[20]Section 26 provides in relevant part: "All persons are capable of committing crimes except those belonging to the following classes: [¶] One—Children under the age of 14, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness."

when the child is a victim, rather than an accused, similar "special protection," not given to older teenagers, should be afforded. By its very terms, section 288 furthers that goal.

The Legislature has also determined that persons who commit sexual offenses on children under the age of 14 should be punished more severely than those who commit such offenses on children under the age of 18. For example, sodomy or oral copulation with a person under 18 is punishable by a maximum of one year in county jail or three years in state prison. (§§ 286, subd. (b)(1), 288a, subd. (b)(1).) On the other hand, such conduct with a child under 14 is made punishable by a maximum state prison sentence of eight years. (§§ 286, subd. (c), 288a, subd. (c).) These differences in punishment support the view that children under the age of 14 are given special protection under our laws.

Other provisions of the Penal Code also demonstrate this public policy. For example, section 271 punishes desertion of a child under 14 years of age.[21] Section 271a makes it a crime to abandon, fail or refuse to maintain a minor child under the age of 14 years.[22]

It is significant that a violation of section 288 carries a much harsher penalty than does unlawful sexual intercourse (§ 261.5), the crime involved in *Hernandez*. Section 261.5 carries a maximum punishment of one year in the county jail or three years in state prison (§ 264), while section 288 carries a maximum penalty of eight years in state prison. The different penalties for these two offenses further supports the view that there exists a strong public policy to protect children under 14.

In recent years, the Legislature has increased the state prison sentence for violations of section 288 without increasing the punishment for unlawful sexual intercourse. In 1978, the penalty for section 288 was increased from three, four or five years to three, five or seven years. (Stats. 1978, ch. 579, § 17, p. 1984.) In 1981, the punishment was increased to the present

---

[21]Section 271 provides: "Every parent of any child under the age of 14 years, and every person to whom any such child has been confided for nurture, or education, who deserts such child in any place whatever with intent to abandon it, is punishable by imprisonment in the state prison or in the county jail not exceeding one year or by fine not exceeding one thousand dollars ($1,000) or by both."

[22]Section 271a provides: "Every person who knowingly and willfully abandons, or who, having ability so to do, fails or refuses to maintain his or her minor child under the age of 14 years, or who falsely, knowing the same to be false, represents to any manager, officer or agent of any orphan asylum or charitable institution for the care of orphans, that any child for whose admission into such asylum or institution application has been made is an orphan, is punishable by imprisonment in the state prison, or in the county jail not exceeding one year, or by fine not exceeding one thousand dollars ($1,000), or by both."

three-, six- or eight-year term. (Stats. 1981, ch. 1064, § 1, p. 4093.) During this same period, the penalty for a violation of section 261.5 has remained constant. (§ 264.)

██ It is true that at common law " ' "an honest and reasonable belief in the existence of circumstances, which, if true, would make the act for which the person is indicted an innocent act, has always been held to be a good defense." ' " (*Hernandez, supra,* 61 Cal.2d at pp. 535-536, citation omitted.) ██ However, it is evident that the public policy considerations in protecting children under the age of 14 from lewd or lascivious conduct are substantial—far more so than those associated with unlawful sexual intercourse. These strong public policies are reflected in several Penal Code statutes, and they compel a different rule as to section 288.

The legislative purpose of section 288 would not be served by recognizing a defense of reasonable mistake of age. Thus, one who commits lewd or lascivious acts with a child, even with a good faith belief that the child is 14 years of age or older, does so at his or her peril.

## III.

The trial court properly rejected appellant's claim that his good faith, reasonable mistake as to the victim's age was a defense to a lewd or lascivious conduct charge with a child under 14 years of age. Accordingly, the judgment of conviction is affirmed.

Mosk, J., Kaus, J., Broussard, J., Reynoso, J., and Lucas, J., concurred.

**GRODIN, J.,** Concurring and Dissenting.—I agree that the enactment of Penal Code section 1203.066, which renders eligible for probation persons convicted of lewd or lascivious conduct who "honestly and reasonably believed the victim was 14 years old or older" is persuasive evidence that in the eyes of the Legislature such a belief is not a defense to the crime.[1] What troubles me is the notion that a person who acted with such belief, and is

---

[1] I do not agree that legislative intent to eliminate good faith mistake of fact as a defense can be inferred from the imposition of relatively higher penalties for that crime. (Maj. opn., *ante,* at pp. 648-649.) On the contrary, as this court has stated in connection with the crime of bigamy: "The severe penalty imposed . . . the serious loss of reputation conviction entails, the infrequency of the offense, and the fact that it has been regarded . . . as a crime involving moral turpitude, make it extremely unlikely that the Legislature meant to include the morally innocent to make sure the guilty did not escape." (*People* v. *Vogel* (1956) 46 Cal.2d 798, 804 [299 P.2d 850].)

not otherwise shown to be guilty of any criminal conduct,[2] may not only be convicted but be sentenced to prison notwithstanding his eligibility for probation when it appears that his belief did not accord with reality. To me, that smacks of cruel or unusual punishment.[3]

I fully accept that "fault" even for purposes of the criminal law, may at times be predicated upon conduct, short of "intentional," which exposes others to substantial and unjustified risks.[4] I recognize also that our legal system includes certain "strict liability" crimes, but generally these are confined to the so-called "regulatory" or "public welfare" offenses, which "do not fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. . . . Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize." (*Morissette* v. *United States* (1952) 342 U.S. 246, 255-256 [96 L.Ed. 288, 296, 72 S.Ct. 240].) Moreover, with respect to such crimes, *"The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect . . . from one who assumed his responsibilities. Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation."* (*Id.*, at p. 256 [96 L.Ed.2d at p. 297], italics added.)

Even in the regulatory context, "judicial and academic acceptance of li-

---

[2] The People suggest that defendant was at least guilty of "sexual intercourse accomplished with a female not the wife of the perpetrator, where the female is under the age of 18 years." (Pen. Code, § 261.5.) Defendant was neither charged nor convicted of that offense, however, and it is by no means clear from the record that he had sexual intercourse with the victim.

[3] Defendant has not made this argument; thus, I do not fault my colleagues for failing to consider it.

[4] Penal Code section 20 provides: "In every crime or public offense there must exist a union, or joint operation of act and intent, *or criminal negligence.*" (Italics added.) In the context of negligent homicide, it has been held that ordinary negligence will not suffice. "The conduct must be aggravated or reckless; that is, it must be such a departure from what would be the conduct of an ordinarily prudent person under the same circumstances as to be incompatible with a proper regard for human life. The conduct must show an indifference to the consequences, and this has been said to require knowledge, actual or imputed, that the act tends to endanger another's life." (*People* v. *Peabody* (1975) 46 Cal.App.3d 43, 47 [119 Cal.Rptr. 780]; see *People* v. *Penny* (1955) 44 Cal.2d 861, 879 [285 P.2d 926].)

For differing views as to the propriety of predicating criminal liability upon ordinary negligence, compare Hall, *Negligent Behavior Should Be Excluded From Penal Liability* (1963) 63 Colum.L.Rev. 632, with Fletcher, *The Theory of Criminal Negligence: A Comparative Analysis* (1971) 119 U.Pa.L.Rev. 401.

ability without fault has not been enthusiastic." (Jeffries & Stephan, *Defenses, Presumptions, and Burden of Proof in the Criminal Law* (1979) 88 Yale L.J. 1325, 1373.) And "with respect to traditional crimes, it is a widely accepted normative principle that conviction should not be had without proof of fault. At least when the offense carries serious sanctions and the stigma of official condemnation, liability should be reserved for persons whose blameworthiness has been established." (*Id.,* at pp. 1373-1374, fn. omitted.)

Commentators have suggested that this normative principle has a home in constitutional law (e.g., Dubin, *Mens Rea Reconsidered: A Plea for a Due Process Concept of Criminal Responsibility* (1966) 18 Stan.L.Rev. 322; Hippard, *The Unconstitutionality of Criminal Liability Without Fault: An Argument for a Constitutional Doctrine of Mens Rea* (1973) 10 Houston L.Rev. 1039; Packer, *The Aims of the Criminal Law Revisited: A Plea For a New Look at "Substantive Due Process"* (1971) 44 So.Cal.L.Rev. 490), and decisions of both the United States Supreme Court and this court lend some support to that premise. For example, in *Robinson* v. *California* (1962) 370 U.S. 660, 666-667 [8 L.Ed.2d 758, 763, 82 S.Ct. 1417], a California statute making it a misdemeanor punishable by imprisonment for a person to "be addicted to the use of narcotics" even though he had never touched any narcotic drug within the state or been guilty of any irregular behavior there, was held to inflict cruel and unusual punishment in violation of the Fourteenth Amendment. (Cf. *Powell* v. *Texas* (1968) 392 U.S. 514, 533 [20 L.Ed.2d 1254, 1268, 88 S.Ct. 2145].)

In *Burg* v. *Municipal Court* (1983) 35 Cal.3d 257 [198 Cal.Rptr. 145, 673 P.2d 732], this court unanimously upheld, against due process constitutional attack, a statute which makes it an offense for "any person who has 0.10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle." (Veh. Code, § 23152, subd. (b).) The heart of that attack, though phrased in familiar terms of "vagueness" and "lack of due notice," was that a person might be unaware that his blood alcohol level exceeds the proscribed limit, and thus might be morally "innocent." In response, we observed that it requires "more than a small amount of alcohol" to produce a .10 blood-alcohol reading, and that readily available and widely disseminated charts "show with reasonable certainty the number of different alcoholic beverages necessary for a particular individual to reach [that level]." (*Burg* v. *Municipal Court, supra,* 35 Cal.3d at pp. 271-272.) "The very fact that he has consumed a quantity of alcohol should notify a person of ordinary intelligence that he is in jeopardy of violating the statute." (*Id.,* at p. 271.) Thus, "[o]ne who drives a vehicle after having ingested sufficient

alcohol to approach or exceed the level proscribed is neither 'innocent' . . . nor is he without 'fair warning'. . . . It is difficult to sympathize with an 'unsuspecting' defendant who did not know if he could take a last sip without crossing the line, but who decided to do so anyway." (*Ibid.*)

While upholding the statute's validity, we nevertheless recognized the possibility of constitutional problems arising out of its application in particular cases. Observing that *Burg* involved a facial attack on the statute following overruling of demurrer, we stated: "*We therefore need not consider to what extent in particular cases fundamental notions of due process would permit a defendant to show, for example, that he did not knowingly or voluntarily drive or consume alcohol.*" (35 Cal.3d at p. 266, fn. 10, italics added; see also *State* v. *Guest* (Alaska 1978) 583 P.2d 836, 838 ["it would be a deprivation of liberty without due process of law to convict a person of a serious crime without the requirement of criminal intent"]; but cf. *Com.* v. *Miller* (1982) 385 Mass. 521 [432 N.E.2d 463, 466].)

The Legislature has itself determined, in section 1203.066, that a person's belief in the victim's age being over 14 may be not only honest but reasonable. No doubt the standard of what is reasonable must be set relatively high in order to accomplish the legislative objective of protecting persons under 14 years of age against certain conduct. Perhaps it is not enough that a person "looks" to be more than 14; perhaps there is a duty of reasonable inquiry besides. At some point, however, the belief becomes reasonable by any legitimate standard, so that one would say the defendant is acting in a way which is no different from the way our society would expect a reasonable, careful, and law-abiding citizen to act.

At that point, it seems to me, the imposition of criminal sanctions, particularly imprisonment, simply cannot be tolerated in a civilized society.

In this case we cannot ascertain from the record on appeal whether the trial court found some merit in defendant's claim that he honestly and reasonably believed the victim to be over 14 years of age. Since the court apparently considered defendant eligible for probation it is possible that the claim was given credence. If so, and defendant's conduct was in other respects that which we would expect of a reasonable, careful, and law-abiding citizen, I would conclude that imposition of a sentence of imprisonment on defendant is impermissible. Inasmuch as the record is inadequate to resolve either question, however, I would remand for a new probation and sentence hearing at which the court, if probation is again denied, should make express findings as to whether defendant honestly and reasonably believed the victim to be over 14 years of age and, if so, whether his conduct with her

otherwise reflected that mens rea traditionally accepted as a prerequisite to the imposition of serious penal sanctions.