183 Cal.App.4th 1451 (2010)
THE PEOPLE, Plaintiff and Respondent,
v.
JOSE LUIS TEPETITLA-CRUZ, Defendant and Appellant.
No. E046846.
Court of Appeals of California, Fourth District, Division Two.
April 22, 2010.
*1453 Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Peter Quon, Jr., Stephanie H. Chow and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
RAMIREZ, P. J.
A jury convicted defendant, Jose Luis Tepetitla-Cruz, of seven counts of committing lewd and lascivious acts on a minor (Pen. Code, § 288, subd. (a)),[1] three counts of engaging in oral copulation with a person under the age of 14 who is more than 10 years younger than the defendant (§ 288a, subd. (c)(1)) and one count of committing a forcible lewd and lascivious act on a minor (§ 288, subd. (b)(1)).[2] The jury found true an allegation that defendant had committed lewd and lascivious acts against more than one victim (§ 667.61, subd. (e)(5)). Defendant was sentenced to prison for 15 years to life plus 26 years, and appeals, claiming the jury was misinstructed and insufficient evidence supports his conviction of committing forcible lewd and lascivious acts. We reject his contentions and affirm, while directing the trial court to correct errors in the information, the minutes of the sentencing hearing and the abstracts of judgment.
While there were two victims involved, the issues raised by defendant relate only to one of them, whom we identify as the second victim.[3] The facts related to the first victim are irrelevant to this appeal and the facts related to *1454 the second victim will be described below, as they are pertinent to the issues discussed.

ISSUES AND DISCUSSION

1. Jury Instruction on Forcible Lewd and Lascivious Act

The jury was instructed as to the charged commission of a forcible lewd act on a minor (§ 288(b)), in pertinent part, "To prove that the defendant is guilty of this crime, the People must prove that, [¶] ... [¶] ... [t]he defendant willfully caused a child to touch ... the defendant's body .... [¶] In committing the act, the defendant used force, violence, duress, menace or fear of immediate and unlawful bodily injury to the child or someone else.... [¶] ... [¶] The force used must be substantially different from or substantially greater than the force needed to accomplish the act itself. [`Duress,' `menace,' and `fear of immediate and unlawful bodily harm to the child or someone' else were defined.] [¶] ... [¶] It is not a defense that the child may have consented to the act." (Italics added.)
Defendant here claims that it was error to instruct the jury that consent of the victim is not a defense to a forcible lewd and lascivious act. As the People correctly note, defendant requested that the above quoted instruction, including the italicized portion, be given and his trial counsel stated that there was no evidence to support a consent "defense" to this charge.[4] The issue of forfeiture aside, we disagree with his assertion that the instruction is erroneous.
As defendant correctly notes, the Sixth District has, after taking conflicting positions on the forcible element of section 288(b),[5] managed to get before the California Supreme Court the issue whether consent is a defense when the People rely on duress, not force, as a means of accomplishing a forcible lewd and lascivious act.[6] However, here, the People did not argue that defendant *1455 had committed the forcible lewd and lascivious act by the use of duress and there was no evidence to support such a theory.
Relying on the opinion authored by the Third District which began the conflicting decisions which culminated in the granting of review by the California Supreme Court in Soto, People v. Cicero (1984) 157 Cal.App.3d 465 [204 Cal.Rptr. 582] (Cicero), defendant asserts that consent is a defense to a forcible lewd and lascivious act committed by means of force. However, in our opinion, the analysis in Cicero is fatally flawed.
Cicero begins by analogizing the forcible aspect of section 288(b) to the force element of rape of an adult. (Cicero, supra, 157 Cal.App.3d at p. 475.)[7] It points out that the rape law "primarily guards the integrity of a woman's will and the privacy of her sexuality from an act of intercourse undertaken without her consent." (157 Cal.App.3d at p. 475.) Because of this, the force used to accomplish the rape of an adult need not result in injury to the victim and "plays merely a supporting evidentiary role, as necessary only to insure an act of intercourse has been undertaken against a victim's will." (Ibid.) Finding that the "will and sexuality" of minors deserves no less protection than that of adult rape victims, the Cicero court arrived at the following definition of "forcible" for a conviction under section 288(b): "a method of obtaining a child's participation in a lewd act in violation of a child's will and not exclusively as a means of causing physical harm to the child." (Cicero, supra, 157 Cal.App.3d at pp. 475-476.)
Having so concluded, the Cicero court was then confronted with the uncomfortable fact that section 288(b) was amended in 1981 to delete from its provisions the requirement that the act be "against the will of the victim."[8] *1456 Cicero conceded that the legislative history of this amendment offered no clue for its raison d'être. (Cicero, supra, 157 Cal.App.3d at p. 477.) So, it offered reasons why interpreting the amendment to mean that the Legislature wished to make irrelevant whether the act was against the victim's will or with or without the victim's consent was illogical. (Id. at pp. 477-478.) In so doing, it ignored the "force" and "violence" portions of section 288(b) and focused on the alternate means of violating the subdivision, i.e., by duress, by menace or by threat of great bodily harm. (157 Cal.App.3d at pp. 477-478.) As to these, Cicero pointed out that their ordinary meaning is that the will of the victim has been overborne. (Ibid.) The Cicero court then concluded, "We therefore infer that the Legislature did not intend to eliminate proof an act was undertaken against the victim's will in all circumstances under subdivision (b)." (Id. at p. 478, italics added.) Rather, the Cicero court posited that the purpose of the amendment "was to make clear that the prosecution need not prove resistance by the minor in order to prove an act was committed `by use of force' and against the will of the victim ...."[9] (157 Cal.App.3d at p. 480.)
Cicero rejected the notion that the "force" method of the forcible requirement of section 288(b) was merely "physical force substantially different from or substantially greater than that necessary to commit the lewd act." (Cicero, supra, 157 Cal.App.3d at p. 479.) Its reason was that such a notion "would ... impose the potential formidable penalties of subdivision (b) on those who are far less culpable" [than] "the stranger who drags the teenage girl into the bushes." (Ibid.) The example Cicero offers of one far less culpable is "the 16-year-old boy who gives his 13-year-old girl friend a piggy-back ride into her bedroom, there to fondle her with her consent." (Id. at p. 480.) However, we seriously doubt that such a ride would be construed by a rational jury to be "force" envisioned by subdivision (b).
The Cicero court then reached its ultimate conclusion that "if the victim suffered no physical harm[,] the prosecution must still show that the lewd act was undertaken against the will of the victim.... [¶] ... [¶] Our conclusion necessarily implies that ... it is an affirmative defense to a charged violation of subdivision (b) ... that the act was not, in fact, undertaken against the will of the victim[,] but was rather undertaken with knowing consent." (Cicero, supra, 157 Cal.App.3d at pp. 482.) The Cicero court then went on to state that it was unaware of any statute making a minor incapable of consenting to sexual acts under all circumstances. (Id. at p. 482.) It then *1457 reached "factual and sociological" conclusions that not all minors are incapable of knowingly consenting to sexual acts. (Id. at pp. 483-484.)
(1) Cicero acknowledged what it called "settled" law that consent of the victim is not a defense to nonforcible lewd and lascivious acts under section 288, subdivision (a). (Cicero, supra, 157 Cal.App.3d at p. 482.)[10] However, if, as Cicero itself states (Cicero, at pp. 472-474), the only difference between subdivisions (a) and (b) of section 288 is the presence in the latter of force, violence, duress, menace or fear of bodily injury, then there can be no logic in the application of the concept of consent to the latter, but not to the former.[11] Section 288, subdivision (a) and section 288(b) exist to protect minors from being engaged in sexual touching by defendants, regardless of whether the victims wanted the touching, because society has determined that they merit such protection. In Olsen, the California Supreme Court held, "Time and again, the Legislature has recognized that persons under 14 years of age are in need of special protection." (People v. Olsen, supra, 36 Cal.3d at p. 647.)[12] Subdivision (b) merely increases the punishment for such acts when the defendant uses force, violence, duress, menace or fear of bodily harm. Moreover, in connection with "force" or "violence," apart from the other means of demonstrating that the act was forcible, it is illogical to say that the defendant used either in committing a lewd and lascivious act, yet the victim consented to the act. If the victim consented, there would be no need for the defendant to use "force" or "violence." Whatever logical appeal Cicero arguably has to the "duress, menace or fear of ... injury" provisions of subdivision (b), it has none whatsoever to the "force [or] violence" provisions.
Cicero's holding was rejected in Quinones. Therein, the Sixth District disagreed with the defendant's claim that the jury should have been instructed that the force the defendant used overcame the will of the victim, thusly, "Although we agree with the Cicero majority that a conviction based on *1458 `duress,' `menace,' or `threat of great bodily harm' necessarily implies that the `will of the victim' has been overcome [citation], the same cannot be said of a conviction based on the use of force.... `[F]orce is limited to something the perpetrator applies.' Consequently, we believe the first part of the definition of force suggested in Cicero`physical force substantially different from or substantially in excess of that required for the lewd act'is sufficient." (Quinones, supra, 202 Cal.App.3d at p. 1158.)
A concurrence authored by another justice of the Sixth District in Bolander, contains further criticism of Cicero. "In my view, the analysis in Cicero diverges from both the Legislature's intent and the plain language of the statute. The result of this analysis is a holding which misconstrues the statute and provides a misleading definition of force. Furthermore, the utilization of Cicero's definition of force . . . poses a serious danger of confusing jurors. Cicero's legislative intent analysis led it down the wrong path. The more apparent and equally plausible legislative intent behind the 1981 amendment of section [288(b)] was to obviate the need for the prosecution to (1) prove lack of consent and (2) rebut a defense claim of reasonable good faith belief in consent .... Since the Legislature unambiguously eliminated lack of consent as an element of the offense in 1981, I cannot agree with Cicero's conclusion that this element remains a part of the prosecution's case in those cases where the use of force causes no physical harm. Once lack of consent was eliminated as an element of the prosecution's case, it was not reborn as a part of the definition of force. Lack of consent is not an element of the offense prohibited by section [288(b)], and the victim's consent is not an affirmative defense to such a charge. The victim's consent or lack thereof is simply immaterial." (Bolander, supra, 23 Cal.App.4th at pp. 162-163 (conc. opn. of Mihara, J.), fn. omitted.)
(2) As we have already stated, in addition to our conclusion that the instruction was not improper, even if it was, defendant could have suffered no prejudice as there was no evidence that the second victim consented to the act charged as a forcible lewd and lascivious act. The People argued to the jury, concerning this act, "That's a lewd and lascivious act on a minor with the addition of forceaccomplished by force. The first three elements [of that offense] are the same [as the nonforcible lewd and lascivious acts charged]. [¶] ... [The second victim] told you that ... defendant would sometimes make her rub his penis with her hand. And how would he accomplish that? She'd try to pull her arm away, and he would pull it back onto his penis. [¶] You saw how small she is now. Imagine how she was a couple of years ago. And you can see him; he's a grown man, 30-something years old when this happened. He forcibly took her hand and put it on his penis." Defendant *1459 argued to the jury only that there was insufficient evidence that he molested the second victim.
The second victim testified that defendant was her stepfather. After she turned 11, he began to touch her sexually, and continued to do so over a one-year period at two different homes in which she lived. He touched her over her clothes more than 10 times and under her clothes more than five. He touched her breasts over her clothes twice. The touching would occur while she would be in her bed or her mother's bed. Her mother would be gone. Defendant would undo her pants and reach under them and under her underpants. Sometimes, she would move to the floor or leave to get away from him, but, despite this, he would continue to touch her. She tried to push his hand away and get away from him. She would leave the room, but he would follow her. He made her touch him on his penis. He would grab her hand and she would try to pull away, but he would try to hold her hand. He would eventually be able to put her hand on his penis. He would then move her hand up and down on his penis. This happened more than five times. She was afraid to tell her mother, so she did not, even though her mother asked her. At the second home in which she lived, she did not yell out, "Stop this" or "Don't do this to me"; she said nothing. During all the touching, defendant falsely reported to the second victim's mother that the second victim had a boyfriend, was watching inappropriate things on television and the computer and the second victim would get in trouble over this with her mother.
Defendant did not testify and no statements he made about any of the incidents with the second victim were introduced into evidence. No one else witnessed any of the incidents involving the second victim.
(3) There is no evidence of consent. The fact that the second victim did not, during the later touchings, object or say anything to the defendant and she delayed reporting to her mother is not evidence of consent. The fact that she had an acrimonious relationship with defendant during the time he was touching her completely undermined any speculation that she might have consented to his forcible touching of her during the incident for which he was convicted under section 288(b). Even in the context of rape,[13] jury instructions on consent are appropriate only when there is "`substantial evidence of [the victim's] equivocal conduct that would have led a defendant to reasonably and in good faith believe consent existed where it did not.' [Citation.]" (People v. Martinez (2010) 47 Cal.4th 911, 954 [105 Cal.Rptr.3d 131, 224 P.3d 877], italics added.) There was no such evidence here.
*1460 In supplemental briefing,[14] defendant contends there was insufficient evidence he used force to compel the second victim to put her hand on his penis and move it up and down.[15] We disagree.[16]
Bolander, a case upon which defendant relies heavily, criticized the holdings of the same district in People v. Schulz (1992) 2 Cal.App.4th 999 [3 Cal.Rptr.2d 799] and People v. Senior (1992) 3 Cal.App.4th 765 [5 Cal.Rptr.2d 14], upon which defendant also relies. Bolander pointed out that the statements in Schulz and Senior that "the evidence of force was insufficient because lewd acts with a child under ... 14 `almost always involve some physical contact other than [the lewd act itself]' [citation] and `... a modicum of holding and even restraining cannot be regarded as substantially different or excessive "force" [beyond the force required for the lewd act]' [citation]" were dictamoreover, they were incorrect dicta. (Bolander, supra, 23 Cal.App.4th at p. 159.) The Bolander court pointed out that in criticizing the dicta in Schulz and Senior, the court in People v. Neel (1993) 19 Cal.App.4th 1784, 1790 [24 Cal.Rptr.2d 293] commented, "A defendant may fondle a child's genitals without having to grab the child by the arm and hold the crying victim in order to accomplish the act. Likewise, an assailant may achieve oral copulation without having to grab the victim's head to prevent the victim from resisting. Simply stated, such force is different from and in excess of the type of force which is used in accomplishing similar lewd acts ...." (See Bolander, supra, 23 Cal.App.4th at p. 160.) Thus, in Bolander, the same district that authored Schulz and Senior concluded that force was used when the victim tried to pull his pants back up after the defendant had pulled them down and the defendant bent the victim over and put his hands on the victim's waist and pulled the latter towards him as he inserted his penis into the victim. (Id. at pp. 159, 161.)
Defendant asserts that there is a distinction between the facts in People v. Babcock (1993) 14 Cal.App.4th 383, 388 [17 Cal.Rptr.2d 688], and those here. He summarizes the facts in Babcock as follows: "[T]he defendant ... grabbed [the victim's] hand and touched his crotch with it after she had said, `no.' She tried to pull her hand back but the defendant pulled it back." Defendant points to the only difference between the facts of the two cases, *1461 i.e., that the victim in Babcock said no. We find this difference insignificant. There are many ways to "say `no'." One of them is to pull your hand away as a person is trying to place it on his penis, followed by the person holding the hand onto the penis and manipulating it up and down the penis. Moreover, the absence of the word, "No" did not force the appellate court in People v. Pitmon (1985) 170 Cal.App.3d 38 [216 Cal.Rptr. 221] to conclude that there was insufficient evidence of force. Therein, the defendant grabbed the victim's hand, placed it on his own genitals and rubbed himself with the victim's hand. (Id. at p. 44.) The Pitmon court concluded, "There can be little doubt that defendant's manipulation of [the victim's] hand as a tool to rub his genitals was a use of physical force beyond that necessary to accomplish the lewd act. The facts show defendant had hold of [the victim's] hand throughout this act." (Id. at p. 48.)

2. Jury Instruction on Lesser Included Offense to Forcible Lewd and Lascivious Acts on Minor

The trial court instructed the jury, orally, "If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the crime charged, you may nevertheless convict him of any lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of the lesser crime. [¶] The crime of 288(a) is lesser than that of 288(b)(1) charged in Count 13." The jury was orally instructed on the elements of a violation of section 288, subdivision (a) (nonforcible lewd and lascivious acts on a minor) and section "288(a)(c)(1)," which was identified as "oral copulation of a person who was under the age of 14 and at least 10 years younger than the defendant." No other crimes were defined orally for the jurors. The written instructions set forth the elements of a violation of sections 288, subdivision (a), 288(b)(1) and "288A(C)(1)," the latter of which contained the elements of the crime of oral copulation of a person under the age of 14 who is at least 10 years younger than the defendant. The printed instruction on the lesser offense to a violation of section 288(b)(1) stated that it was "[t]he crime of 288a." No other crimes were defined for the jury in the written instructions. Defendant here contends that the written instructions suggested to the jury that oral copulation of a person under 14 and at least 10 years younger than defendant, not nonforcible lewd and lascivious acts on a minor, was the lesser crime to the charged forcible lewd and lascivious acts. Therefore, the jury was not instructed that committing nonforcible lewd and lascivious acts was the lesser offense to the charged crime and this error requires reversal of his conviction of the latter.
As stated before, the prosecutor argued to the jury that the charged forcible lewd and lascivious act occurred when defendant made the second victim "rub his penis with her hand.... She'd try to pull her arm away, and he *1462 would pull it back onto his penis. [¶] ... He forcibly took her hand and put it on his penis." He asserted that defendant was guilty of committing forcible lewd and lascivious acts, as charged. He also said that the charged commission of forcible lewd and lascivious acts was "basically the same thing" as the commission of nonforcible lewd acts, "with the addition of force." He never argued that defendant engaged in oral copulation with this victim. Indeed, there was no evidence that defendant had. Finally, the second part of the verdict form for the charged forcible lewd and lascivious acts states, "If you have found the defendant `Not Guilty' of the crime charged ... please proceed to Part B below. [¶] PART B [¶] Lesser offense: We, the jury, find the defendant ... GUILTY OR NOT GUILTY of violating Penal Code section 288, subdivision (a), Lewd Act on a Child, a lesser offense necessarily included in the offense charged ...." Therefore, we are persuaded that the jury could not possibly have believed[17] that convicting defendant of oral copulation of a person under 14 who was at least 10 years younger than him was an option available to them as an alternative to convicting him of the charged forcible lewd and lascivious acts. Rather, the jury must have believed that committing nonforcible lewd and lascivious acts was that option.[18]
Even if the failure to put parentheses around the "a" in the written instructions was error, it was not prejudicial as, contrary to defendant's assertion, and as already discussed, there was substantial evidence of force.

DISPOSITION
The trial court is directed to (1) amend the information to strike from the allegation as to count 5 the following, "by use of force, violence, duress, menace, and fear of immediate and unlawful bodily injury," (2) amend the minutes of the sentencing hearing to reflect its imposition of a court security fee of $20 per conviction, for a total of $220, rather than $220 per conviction, as the order currently states, (3) amend the determinate abstract of judgment *1463 to show that counts 2 through 5, 11 and 12 were nonviolent offenses, not violent, as the abstract currently states, and (4) amend the indeterminate abstract to show that defendant was sentenced pursuant to section 667.61 (by checking the box at No. 8). In all other respects, the judgment is affirmed.
McKinster, J., and Richli, J., concurred.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] Hereinafter, for simplicity's sake, this section will be referred to as 288(b).
[3] In reviewing the trial transcript, we note that at the end of his cross-examination of the second victim's mother, who had been called as a defense witness, the prosecutor asked the mother if she believed her daughter's account of the molestations by defendant the day her daughter reported them to her and if she still believed them. We caution prosecutors against asking such questions. They are irrelevant and inflammatory. (See People v. Chatman (2006) 38 Cal.4th 344, 381 [42 Cal.Rptr.3d 621, 133 P.3d 534]; People v. Coffman and Marlow (2004) 34 Cal.4th 1, 93 [17 Cal.Rptr.3d 710, 96 P.3d 30]; People v. Melton (1988) 44 Cal.3d 713, 744 [244 Cal.Rptr. 867, 750 P.2d 741]; People v. Zambrano (2004) 124 Cal.App.4th 228, 239, 240 [21 Cal.Rptr.3d 160]; People v. Smith (1989) 214 Cal.App.3d 904, 915 [263 Cal.Rptr. 155]; People v. Sergill (1982) 138 Cal.App.3d 34, 39, 40 [187 Cal.Rptr. 497]; People v. Alva (1979) 90 Cal.App.3d 418, 426, 427 [153 Cal.Rptr. 644].)
[4] Defense counsel made a motion to acquit defendant of this charge on the basis that there was insufficient evidence of force, violence, duress, menace or fear of bodily harm. Specifically, defense counsel said, "There is no testimony by [the second victim] that any of those [things] occurred during the alleged wrongful touching ...." Contrary to defendant's assertion, this motion neither absolves him of his obligation to object to the instruction with which he now takes issue, nor does it negate the forfeiture he should suffer because he requested that this instruction be given.
[5] Compare dicta in People v. Bolander (1994) 23 Cal.App.4th 155, 159, 160, 161 [28 Cal.Rptr.2d 365] (Bolander) with the holding in People v. Quinones (1988) 202 Cal.App.3d 1154, 1158 [249 Cal.Rptr. 435] (Quinones).
[6] See People v. Soto, review granted December 10, 2008, S167531 (Soto).
[7] In People v. Griffin (2004) 33 Cal.4th 1015, 1023 [16 Cal.Rptr.3d 89], 94 P.3d 1089], the California Supreme Court rejected the notion that force for forcible rape required force "`substantially different from or substantially greater than' the physical force normally inherent in an act of consensual sexual intercourse." (Italics omitted.) It commented, "There is considerable difference between the crime of lewd acts by force on a child under the age of 14 ... and the crime of forcible rape.... [¶] ... [¶]... The gravamen of the crime of forcible rape is a sexual penetration accomplished against the victim's will by means of force, violence, duress, menace, or fear of ... bodily injury." (Id. at pp. 1026-1027.) Our high court, in dicta, "endorsed" the holding in Cicero only to the extent that the latter required the force for section 288(b) to be substantially different from or substantially greater than the physical force necessary to commit a lewd act. (33 Cal.4th at p. 1027.) It made no comment whatsoever about Cicero's requirement that the victim's will be overcome or that the victim's consent is a defense under section 288(b).
[8] Before the 1981 amendment, section 288(b) required that the act be "by use of force, violence, duress, menace, or threat of great bodily harm, and against the will of the victim." (Pen. Code, former § 288, subd. (b).)
[9] Of course, "`by use of force' ... and against the will of the victim" was how section 288(b) read before it was amended to delete the latter provision. (See fn. 8, ante, p. 1455.)
[10] It also pointed out that where the defendant inflicts a physical harm on the victim, consent is not a defense. (Cicero, supra, 157 Cal.App.3d at p. 484.)
[11] In People v. Cardenas (1994) 21 Cal.App.4th 927, 937, footnote 7 [26 Cal.Rptr.2d 567], the appellate court cited People v. Olsen (1984) 36 Cal.3d 638 [205 Cal.Rptr. 492, 685 P.2d 52] (see text, post) as authority for the proposition that consent, or a defendant's reasonable good faith belief that the victim is old enough to consent, is inapplicable to section 288(b) offenses. (See fn. 9, ante.)
[12] The dissent in Cicero stated, "I believe the Legislature simply recognized the lewd act in subdivision (a) need not be against the will, and thus, it need not be in the use of force under subdivision (b). In fact, under the plain language of the statute, the act in subdivision (b) can be committed with knowing consent and still be a violation of the subdivision, if force is used. Force is limited to something the perpetrator applies; it is independent of the actions or thoughts of the under-14-year-old victim. [¶] ... In my [view], the statute creates a protected class under the age of 14, and the act, if done with force, is a violation of subdivision (b) regardless of `knowing consent,' `against the will,' or whether the victim resisted." (Cicero, supra, 157 Cal.App.3d at pp. 487-488 (dis. opn. of Regan, Acting P. J.).)
[13] See footnote 7, ante, page 1455.
[14] Defendant also asserts in his original briefing, in connection with his second assignment of jury instruction error, that there was "scant evidence of force."
[15] To the extent defendant also suggests the evidence was insufficient to prove lack of consent on the part of the second victim, our conclusion that such proof is unnecessary to a conviction of violating section 288(b) renders the matter moot.
[16] Because this case was not tried on the theory that defendant used duress to get the victim to touch his penis and masturbate him, we will not discuss defendant's assertion that there was insufficient evidence of duress.
[17] The standard for instructional error, as applied here, is whether there is a reasonable likelihood the jury believed that a conviction of oral copulation, and not of nonforcible lewd and lascivious acts, was the option available when deciding whether to convict defendant of forcible lewd and lascivious acts. (See People v. Frye (1998) 18 Cal.4th 894, 957 [77 Cal.Rptr.2d 25, 959 P.2d 183], disapproved on other grounds in People v. Doolin (2009) 45 Cal.4th 390, 421, fn. 22 [87 Cal.Rptr.3d 209, 198 P.3d 11].) We conclude that not only was there no such reasonable likelihood, there was no such possibility.
[18] Having rejected defendant's contention, we necessarily reject his assertion, based on the validity of his contention, that he is entitled to probation consideration and resentencing. Thus, we need not, as he has asked us to, take judicial notice of the legislative history of the section pertaining to his eligibility for probation.