Michael GARRISON, # 237608,
Petitioner,

v.

Frank ELO, Respondent.

No. CIV.A.00CV73520–DT.

United States District Court,
E.D. Michigan,
Southern Division.

July 20, 2001.

Michael Garrison, Camp Pugsley, Kingsley, MI, pro se.

Bethany L. Scheib, Pending App, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Frank Elo, respondents.

## *OPINION AND ORDER DENYING HABEAS CORPUS PETITION*

O'MEARA, District Judge.

### I. Introduction

Petitioner, Michael Garrison ("Petitioner"), presently confined at the Adrian

Temporary Correctional Facility in Adrian, Michigan, has filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is confined in violation of his constitutional rights. In his application; Petitioner challenges his May 9, 1994, conviction by guilty plea of one count of third degree criminal sexual conduct in violation of M.C.L. § 750.520d(1)(a). Under the terms of the agreement, an additional charge of third degree criminal sexual conduct and a supplemental charge of being a second felony habitual offender, M.C.L.. § 769.10, were dismissed. Petitioner was sentenced to three and a half to fifteen years imprisonment.

## II. Procedural History

### A. Factual background and guilty plea proceedings

Petitioner pleaded guilty to one count of committing third degree criminal sexual conduct upon a thirteen year old girl. At Petitioner's May 9, 1994, plea proceeding, he admitted engaging in penile-vaginal sexual penetration with the girl. Plea Transcript ("Plea Tr.") at 8. Petitioner was eighteen years old when he and the girl had sexual intercourse. *People v. Garrison*, Michigan Court of Appeals Docket No. 176302 (May 23, 1995).[1]

At the plea proceeding, the trial judge first informed Petitioner that he was being charged with criminal sexual conduct in the third degree and that "this is an offense that carries a maximum possible sentence of 15 years in the state's prison, the minimum is discretionary with the court, and there is mandatory AIDS testing." Plea Tr. at 3. The trial judge advised Petitioner that he could plead guilty, not guilty, or stand mute. The trial judge also advised Petitioner not to plead guilty unless he was guilty.

Before Petitioner's guilty plea was accepted, the judge informed him that he had a right to a jury trial or a bench trial and that he had a right to the presumption of innocence concerning all of the charges against him and the right to require the prosecutor to prove him guilty beyond a reasonable doubt. Petitioner was informed that he had the right to be present during any trial, the right to call witnesses on his behalf, and to confront and cross-examine witnesses against him. Petitioner was informed of his right to testify on his behalf and his right not to testify at all. He was informed that, if he chose not to testify, his silence could not be used against him. Petitioner was informed that if he pleaded guilty he would be giving up all of the trial rights of which he had been informed. Petitioner addressed the court and stated that he understood his rights and that he wanted to waive them and plead guilty.

---

1. M.C.L. 750.520d(1)(a) criminalizes sexual penetration with a person who is at least thirteen and under sixteen, regardless of whether the penetration was consensual. According to the victim's testimony, she surreptitiously left her home by way of her bedroom window when Petitioner knocked on it and asked her to come driving with him. The victim testified that Petitioner was not her boyfriend; she described him as the boyfriend of a girlfriend of hers. She considered Petitioner a friend. Nonetheless, when he knocked on her bedroom window at about 5:30 a.m., she left with him. They went driv-

ing, and eventually went to Petitioner's father's house, where she and Petitioner had sexual intercourse in a bedroom for about ten or fifteen minutes. The victim testified that the sexual contact between Petitioner and herself was consensual. Preliminary Examination Tr. at 6–14. Petitioner confessed to the crime in writing and confessed in both Clare and Gladwin counties to two separate incidents. *People v. Garrison*, Clare County Circuit Court docket No. 93–000434–FC, Opinion denying motion to vacate plea and withdraw plea and to vacate sentence (June 21, 1999) ("Opinion") at 5.

Defense counsel stated on the record that Petitioner was pleading guilty to one count of third degree criminal sexual conduct in exchange for dismissal of an additional third degree criminal sexual conduct charge in another county and dismissal of a habitual offender second felony charge. It was stressed by counsel and the court that this was the complete plea agreement. Petitioner stated on the record that he understood that this was the complete plea agreement.

The trial judge asked Petitioner if anyone had made him any other promises beyond the plea agreement and if anyone had promised him a lenient sentence if he pleaded guilty. Petitioner stated that no other promises had been made to him. Petitioner stated that he was not forced or threatened to plead guilty and that he was pleading guilty freely and voluntarily. Petitioner was asked if he had any questions about what the court had told him and he replied that he did not. The trial judge then elicited the factual basis of the plea. Petitioner then pleaded guilty to one count of second degree criminal sexual conduct. Petitioner was later sentenced to three and a half to fifteen years in prison.

## B. Appellate and post-conviction proceedings

### 1. Direct appeal

Petitioner appealed his sentence as of right in the Michigan Court of Appeals. Petitioner's appeal contended that his sentence was disproportionate to his crime and his criminal history and circumstances under *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990). The Michigan Court of Appeals denied Petitioner's appeal, finding that the guideline minimum sentence range was from 36 to 96 months and that Petitioner's 42 month minimum sentence was within the lower end of the guidelines' range and was presumptively proportionate. As Petitioner presented no unusual circumstances to rebut the presumption, his challenge to his sentence was denied. *People v. Garrison,* Michigan Court of Appeals Docket No. 176302 (May 23, 1995). Petitioner's application for leave to appeal this decision to the Michigan Supreme Court was rejected for filing by that court, because it was received more than 56 days after the decision of the Michigan Court of Appeals. M.C.R. 7.302(C)(3); Affidavit of Corbin R. Davis, dated October 6, 2000.

### 2. Postconviction proceedings

Petitioner subsequently moved for postconviction relief in the trial court, seeking appointment of counsel, an evidentiary hearing, and contending that his guilty plea was involuntary and unknowing and resulted from ineffective assistance of counsel. Petitioner asserted that (1) his guilty plea was unknowing an involuntary because it was induced by ineffective assistance of trial counsel through (a) counsel's admonition that Petitioner might be sentenced to life in prison if he refused to plead guilty and (b) counsel's promise that Petitioner would serve no more than three years in prison if he pleaded guilty and (2) the failure of both counsel and the trial court to inform Petitioner that he could not receive a sentence of probation. The trial court appointed counsel and held an evidentiary hearing on the matter.

Petitioner's father, Larry Garrison, testified that he heard Petitioner's trial counsel, Laurence Long, say at a meeting attended by Petitioner and other family members, that if Petitioner pleaded not guilty and lost at both trials, he could receive a very long prison sentence, possibly life.[2] Petitioner's father also testified

2. If Petitioner was convicted at two separate trials for these two separate incidents, after

that trial counsel indicated that Petitioner would serve two or three years in prison if he pleaded guilty. Petitioner's father indicated that counsel may have been making an estimate when he said this. Evidentiary Hearing Tr. ("EH Tr.") at 9–10. Petitioner's father further testified that trial counsel told Petitioner that any sentence he received would be served in prison. *Id.* at 14.

Petitioner's grandmother, Margaret Pelcher, testified that she also attended the family legal meeting and heard trial counsel state that, if he pleaded guilty, Petitioner would serve three years in prison.

Petitioner's mother, Linda Hall, heard attorney Long say that if Petitioner pleaded guilty he would receive two or three years, but if he went to trial and lost, he would get life in prison. Linda Hall further testified that she understood attorney Long to mean that Petitioner would serve no longer than two or three years in prison based on good behavior.

Petitioner testified at the evidentiary hearing. Petitioner testified that attorney Long told him that, if he pleaded guilty the maximum sentence he would receive would be three years, but if he pleaded not guilty, he would get life in prison if he lost. *Id.* 22–23 Petitioner testified that if he "knew anything about [being sentenced to] 15 years, I never would have pleaded guilty." *Id.* at 34.

Petitioner admitted on cross-examination that the trial judge informed him before accepting his guilty plea that the maximum sentence for third degree criminal sexual conduct was 15 years. *Id.* at 35.

Petitioner also admitted recalling being told at arraignment that, if sentenced as a second felony habitual offender, his maximum sentence would be one-and-a-half times the maximum sentence for a first offense. However, he nonetheless asserted that he believed that he would be sentenced to life imprisonment if he pleaded not guilty and was convicted. The trial judge asked Petitioner if he understood that, if his guilty plea was set aside, the original charges would be reinstated, and if convicted on both charges in both counties, he could be sentenced consecutively and as a habitual offender on both charges. Petitioner replied that he knew this.

Petitioner's trial counsel Laurence Long testified. Attorney Long testified that he told Petitioner if he was convicted on both third degree criminal sexual conduct charges, and got in trouble again resulting in an additional felony charge, his next conviction would be his fourth felony, for which he could be sentenced to life in prison. He added that, regarding a sentence Petitioner might receive for the first criminal sexual conduct in the third degree charge, "[t]here would be no reason under the sun for me to tell him life because that is absolutely impossible. The max he was facing would be one-and-a-half times 15." *Id.* at 59, 62.

The trial judge issued an opinion denying Petitioner's challenge to his guilty plea on the merits. The trial judge found that "in all likelihood" trial counsel "probably did" tell Petitioner that, if he did not take the plea, he could be sentenced to life in prison. Opinion at 6. However, the trial court concluded that Petitioner did not

the second conviction of third degree criminal sexual conduct he could have been sentenced as a person convicted of a subsequent felony after being convicted of two or more felonies. That is, if Petitioner was convicted of two separate incidents of third degree criminal sexual conduct, the second of these convictions would have been his third felony. A third felony conviction is punishable by up to twice the longest term prescribed by law for a first conviction of that offense. M.C.L. § 769.11(1)(a). Here, that would have meant twice fifteen——that is, thirty——years. M.C.L. § 750.520d(2).

rely upon any such statement by his attorney, because he was told at the time of his plea that the maximum sentence that he would receive was 15 years. *Id.* at 6. Further, the trial court found that Petitioner had read the Information, which clearly states that his 15 year sentence could be enhanced by one-and-a-half times as a second felony habitual offender. The trial court further found that, regarding Petitioner's expectation that he would serve no more than three years in prison, (1) he was fully informed by the trial court before his plea was accepted that no sentencing agreement or promises of leniency had been made and (2) the record indicates that, but for Petitioner's record of prison misconducts, he would have been paroled after serving three years. *Id.* at 4, 6–7. Consequently, this claim did not warrant vacating Petitioner's guilty plea. The trial court further found that there was no miscarriage of justice because Petitioner's plea was voluntary and intelligent, no promises had been breached, and "[t]o set aside the plea and go to trial would simply be to have the victim tell her rendition of the story, which in effect is being corroborated by the Defendant by his confession that he made to the police." *Id.* at 7.

The Michigan Court of Appeals denied Petitioner's application for leave to appeal the trial court's order "for lack of merit in the grounds presented." *People v. Garrison,* Michigan Court of Appeals Docket No. 220779 (February 9, 2000). The Michigan Court of Appeals denied Petitioner's motion for rehearing. *People v. Garrison,* Michigan Court of Appeals Docket No. 220779 (April 14, 2000). The Michigan Supreme Court denied Petitioner's delayed application for leave to appeal the decision of the Michigan Court of Appeals "because the defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Garri-*

*son,* Michigan Supreme Court Docket No. 116605 (June 26, 2000).

### 3. Procedural default

Respondent asserts that the petition is barred by the doctrine of procedural default, because Petitioner committed the procedural default of failing to present these claims in his appeal of right. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Couch v. Jabe,* 951 F.2d 94 (6th Cir.1991). This Court disagrees.

In *Wainwright,* the United States Supreme Court explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. 433 U.S. at 85, 97 S.Ct. 2497. In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 263–64, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). The last explained state court judgment should be used to make this determination. *Ylst v. Nunnemaker,* 501 U.S. 797, 803–05, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Supreme Court denied Petitioner's application for leave to appeal the trial court's denial of his motion for to withdraw his guilty plea based upon

his failure to comply with MCR 6 .508(D).[3] That Michigan Supreme Court order simply states, "On order of the Court, the delayed application for leave to appeal ... is considered, and it is DENIED, because the defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Garrison*, Michigan Supreme Court Docket No. 116605 (June 26, 2000). Contrary to Respondent's assertion, the Michigan Supreme Court did not clearly and expressly rely on a procedural bar. The court merely stated that Petitioner had failed to establish entitlement to relief under M.C.R. 6.508(D). This could mean either that Petitioner failed to meet the procedural requirements of the rule, or that he had not substantively established entitlement to relief. Without more, this language is insufficient to constitute a reasoned opinion on the matter, and the Court must therefore look to the lower court opinions denying Petitioner's motion for relief from judgment. *See, e.g., Mallory v. Overton*, No. 93–2490, 1994 WL 722833, *2 (6th Cir. Dec.30, 1994) (unpublished) (looking to the trial court's opinion to determine whether petitioner procedurally defaulted where Michigan Supreme Court used similar language in denying leave to appeal); *Grant v. Rivers*, 920 F.Supp. 769, 780–781 (E.D.Mich.1996) (Gadola, J.) (where Michigan Court of Appeals and Michigan Supreme Court denied leave to appeal in standard, one-sentence orders, trial court's

opinion denying motion for relief from judgment · was .last reasoned order); *Thompson v. Elo*, 919 F.Supp. 1077, 1079 (E.D.Mich.1996) (O'Meara, J.) (same), overruled on other grounds, *Rogers v. Howes*, 144 F.3d 990, 994 n. 5 (6th Cir. 1998).

■ In this case, the Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal the trial court's denial of his motion for relief from judgment "for lack of merit in the grounds presented." *People v. Garrison*, Michigan Court of Appeals Docket No. 220779 (February 9, 2000). This one-sentence denial does not constitute a dismissal on procedural grounds. *See, Brown v. Pitcher*, 2001 WL 700858, at *2 (6th Cir.2001)(unpublished)(stating "[t]he federal courts cannot ignore this language, even in a standard order"). Further, this language also fails to provide a reasoned analysis of the court's reasons for denying Petitioner's claims challenging his guilty plea.

■ Accordingly, the Court will look to the trial court's opinion and its order denying Petitioner's 1999 "motion to vacate the plea and to withdraw the plea and to vacate the sentence," Opinion at 8, to determine whether the state courts relied on a procedural bar in dismissing his challenge to his guilty plea. The trial court's June 21, 1999, Opinion denying Petitioner's motion to vacate and withdraw his guilty plea and to vacate his sentence indicate that the

---

**3.** MCR 6.508(D) provides, in relevant part:
 The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion (1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300.
 (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive

change in the law has undermined the prior decision. .
(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates (a) good cause for the failure to raise such grounds on appeal or in the prior motion, and (b) actual prejudice from the alleged irregularity that support the claim for relief. . . .

trial court considered the merits of Petitioner's claims in denying his challenge to his guilty plea. Further, this Opinion was entered after the trial court held an evidentiary hearing addressing the factual basis of Petitioner's claims. The trial court found that the guilty plea transcript, the record as a whole, and evidence presented at the evidentiary hearing showed that Petitioner's challenge to the voluntary and intelligent nature of his guilty plea should be denied on the merits. The trial court's June 21, 1999, Opinion denies Petitioner's claims on the merits. The trial court's subsequent July 7, 1999, Order denying Petitioner's motion states that the motion is denied for reasons stated on the record in the court's prior opinion. This Court thus concludes that Petitioner's claims challenging the voluntary and intelligent nature of his guilty plea are not barred by procedural default. Therefore, the Court will address the merits of Petitioner's claims.

On August 1, 2000, Petitioner filed the instant habeas corpus petition, presenting the following claims:

I. Petitioner was denied his constitutional right to due process of law under the Fourteenth Amendment where he was convicted based upon an illusory plea that was induced by promises and misapprehension.

II. Petitioner's guilty plea resulted from ineffective assistance of trial counsel, where counsel told him that, in exchange he would only have to serve three years in prison and he was sentenced to three to fifteen years.

III. Petitioner's guilty plea was not voluntary and intelligent where counsel erroneously told him that if convicted after a jury trial he was subject to life imprisonment, when the actual maximum sentence he would face was twenty-two-and-a-half years.

IV. Petitioner's guilty plea was involuntary where he was not informed that he could not be sentenced to probation.

V. Petitioner's conviction of third degree criminal sexual conduct violates the Fifth and Fourteenth Amendments of the United States Constitution, because the he had no mens rea or scienter to commit the offense.

Respondent has answered the petition and contends that it is barred by the doctrine of procedural default. For the reasons set forth below, the petition will be denied.

## III. Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996)("AEDPA" or "the Act"), govern this case because petitioner filed his habeas corpus petition after the effective date of the Act. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

As amended, 28 U.S.C. § 2254(d) provides that:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

The United States Supreme Court has recently addressed the question of the proper interpretation of the amendments

to the habeas corpus statute concerning entitlement to relief. The Supreme Court has stated that "[i]n sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). The Supreme Court summarized the standard of review as follows:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 120 S.Ct. at 1523.

■■■■■ "[A] federal habeas making the 'unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.'" *Williams*, 120 S.Ct. at 1521. The reviewing court should not inquire whether all reasonable jurists would agree that the state court's decision was reasonable or unreasonable. However, the reviewing court must be aware that "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, 120 S.Ct. at 1522. Further, an incorrect application of federal law may nonetheless be objectively reasonable.

■■■■■ Where constitutional trial error has been shown and the reviewing court concludes that the error had a substantial and injurious effect or influence in determining the jury's verdict, a state court ruling finding such error harmless beyond a reasonable doubt is outside the realm of plausible, credible outcomes and the petitioner is entitled to habeas relief. *Barker v. Yukins*, 199 F.3d 867 (6th Cir. 1999). "[A] state court's application of federal law is unreasonable and a writ may issue only if reasonable jurists would find it so arbitrary, unsupported or offensive to existing precedent as to fall outside the realm of plausible, credible outcomes." *Barker*, 199 F.3d at 871. "When a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief." *O'Neal v. McAninch*, 513 U.S. 432, 445, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

■■■■ The federal court reviewing a habeas petition must apply the presumption of correctness to evidence-supported factual determinations made by a state court. *West v. Seabold*, 73 F.3d 81, 83 (6th Cir. 1996); *cert. den.* 518 U.S. 1027, 116 S.Ct. 2569, 135 L.Ed.2d 1086 (1996); *Lundy v. Campbell*, 888 F.2d 467, 469 (6th Cir.1989), *cert. denied*, 495 U.S. 950, 110 S.Ct. 2212, 109 L.Ed.2d 538 (1990). This presumption may only be overcome by the presentation of clear and convincing evidence by the petitioner. 28 U.S.C. § 2254(e)(1).

## IV. Discussion

### A. Challenges to guilty plea

 A guilty plea entered into in state court must be voluntarily and intelligently made. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A guilty plea involves the waiver of several federal constitutional rights. Among those rights are 1) the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by the Fourteenth Amendment, 2) the right to trial by jury, and 3) the right to confront and cross-examine one's accusers, both of which are secured by the Sixth Amendment. *Boykin*, 395 U.S. at 243, 89 S.Ct. 1709. The courts are not to "presume a waiver of these three important federal rights from a silent record." *Id.*[4] The controlling standard for the waiver of these rights through a plea of guilty is the classic definition of waiver enunciated in *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), "an intentional relinquishment or abandonment of a known right or privilege."

 A plea is voluntary when it has not been induced by threat, by misrepresentation, or by improper representations such as bribes, and the defendant is fully aware of the direct consequences of the plea when he enters into it. "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." *Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). The plea must be made with knowledge of the "relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The maximum sentence which may be imposed upon a plea of guilty is a fundamental relevant circumstance and likely consequence. "[F]or a defendant's plea of guilty to be voluntary, the defendant must be aware of the maximum sentence which could be imposed." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir.1994).

 "A guilty plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be volun-

---

4. "A person when first charged with a crime is entitled to a presumption of innocence, and may insist that his guilt be established beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Other constitutional provisions also have the effect of ensuring against the risk of convicting an innocent person." *Herrera v. Collins*, 506 U.S. 390, 398–99, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)(collecting cases and listing additional trial rights including the right to compulsory process to secure witnesses, the right to effective assistance of counsel, and the right to prosecutorial disclosure of exculpatory evidence).

Trial courts sometimes inform a defendant before accepting his guilty plea that by pleading guilty he is waiving such rights as the right to the presumption of innocence, the right to require the prosecution to bear the burden of proof beyond a reasonable doubt, the right to counsel at trial, and right to compulsory subpoena process. *See, e.g., United States v. Deal*, 678 F.2d 1062, 1067 (11th Cir.1982). However, this Court has found no precedent indicating that failure to explicitly inform a defendant represented by counsel of these rights will render his subsequent guilty plea involuntary, when a review of the record and the totality of the circumstances shows that the defendant was advised of the trial rights set forth in *Boykin* and that the defendant's guilty plea was in fact voluntary and intelligent.

tary in this latter sense." *Henderson v. Morgan,* 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

■■■■ "[W]hen a defendant enters a guilty plea, the state has the burden to show that the plea was voluntary and intelligent. When a defendant subsequently brings a federal habeas petition challenging his plea, the state generally satisfies its burden by producing a transcript of the state court proceeding." *Garcia v. Johnson,* 991 F.2d 324, 326 (6th Cir.1993). "While 'the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law, and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d),' the historical facts underlying such pleas are entitled to deference under the statute." *Sargent v. Waters,* 71 F.3d 158, 160 (4th Cir.1995)(quoting *Marshall v. Lonberger,* 459 U.S. 422, 431–32, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)).

■■■■ "Determining whether a plea was made voluntarily requires an evaluation of all the relevant circumstances surrounding the plea. The 'ultimate question' is if the plea was in fact voluntary and intelligent." *King v. Dutton,* 17 F.3d at 153 (citations omitted); *Berry v. Mintzes,* 726 F.2d 1142 (6th Cir.), *cert. denied,* 467 U.S. 1245, 104 S.Ct. 3520, 82 L.Ed.2d 828 (1984). *See also, Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Pitts v. United States,* 763 F.2d 197, 200 (6th Cir.1985)(citing *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)). The "minimum requirement" is that the defendant's "plea be the voluntary expression of his own choice." *Brady v. United States* at 748, 90 S.Ct. 1463.

■■■■ Review of the record shows that Petitioner's guilty plea was voluntary and intelligent and made after being fully informed of his constitutional rights. Petitioner was informed by the trial judge of the maximum sentence he faced—fifteen years—before his plea was accepted. Petitioner contends that trial counsel mistakenly told him he could face life imprisonment for his first third degree criminal sexual conduct conviction if he refused to plead guilty. Counsel emphatically denied having told Petitioner this. The trial judge found that counsel may have told Petitioner this, but that Petitioner did not rely on any such statement. This Court agrees that Petitioner has not shown that he was misinformed about the maximum sentence he faced upon pleading guilty.

Petitioner was explicitly informed that he faced a maximum sentence of fifteen years before his plea was accepted. Further, the trial judge found as a matter of fact that Petitioner "did know in fact that the maximum possible sentence he could receive in both counties, as of the point in time that he entered the plea, was that of 22½ years." Opinion at 6. Therefore, this Court is not persuaded that Petitioner's plea was induced by incorrect advice from counsel as to what the maximum sentence he might face if he declined to plead guilty.

■■■■ Petitioner contends that his guilty plea is involuntary because it was induced by a false promise from his attorney that, if he pleaded guilty, he would serve no more than three years in prison. This claim fails to entitle Petitioner to relief. First, Petitioner did not establish as a matter of fact that counsel ever told him this. Petitioner's father testified that counsel may have been making an estimate when he indicated Petitioner would no more than three years in prison with time off for good behavior. Moreover, Petitioner was informed on the record several times that the extent of his plea agreement was dismissal of the habitual offender

charge in the present case and dismissal of the Gladwin County third degree criminal sexual conduct case. Furthermore, Petitioner was told several times on the record before his plea was accepted that there was no sentencing agreement and that no one had made any promises to him or promised him a lenient sentence. Petitioner affirmed under oath that he was aware of these facts. Therefore, this Court concludes that Petitioner's guilty plea was not induced by any promise by counsel that he would serve no more than three years in prison.

Petitioner contends that the trial judge and trial counsel failed to inform him that he could not receive probation for third degree criminal sexual conduct. It is correct that persons convicted of third degree criminal sexual conduct are not eligible for probation. M.C.L. § 771.1 It is also correct that the trial judge did not inform Petitioner on the record that he could not receive probation. The trial judge never mentioned any possibility that Petitioner could or would or might receive probation. Further, the trial judge stressed to Petitioner that no sentencing agreement or promises of leniency had been made. Moreover, all of Petitioner's witnesses except him testified that Petitioner was told he would serve two or three years in prison if he pleaded guilty. Petitioner testified that he was told he would serve no more than three years in prison. No one, not even Petitioner testified that there had been any discussion of any possibility that Petitioner might receive probation. This Court is not persuaded that Petitioner was prejudiced by the trial court's failure to mention that Petitioner could not receive probation for his conviction. A defendant's mere hope that he will not receive a lengthy prison term, or that he will only have to serve a lesser sentence, or that he will receive probation will not invalidate an otherwise voluntary guilty plea. *See Self v. Blackburn,* 751 F.2d 789, 792–93 (5th Cir.1985). Where an actual promise has been made to a petitioner, rather than there being merely a hope or even an "understanding" on his part, federal habeas relief is available if the petitioner "prove[s] '(1) exactly what the terms of the alleged promise were; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of an eyewitness to the promise.' " *Self,* 751 F.2d at 793 (quoting *Hayes v. Maggio,* 699 F.2d 198, 203 (5th Cir.1983)). This is not the case here. Petitioner has not been able to show that his guilty plea was induced in any way by a promise of probation, or even that he had any subjective belief or hope that he might receive probation. Therefore, Petitioner is not entitled to relief from his guilty plea for these reasons. Petitioner does not contend that he did not receive the sentence he had been promised. Therefore, he has not shown that the plea agreement was broken and is not entitled to habeas relief on this account. *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Dissatisfaction with a lawful sentence imposed in exchange for a knowing and voluntary guilty plea does not render the guilty plea involuntary.

Additionally, the Court rejects Petitioner's claim that his guilty plea was illusory. In consideration for his guilty plea, a habitual offender charge which could have increased Petitioner's maximum sentence from fifteen years to twenty-two-and-a-half years was dismissed. An additional third degree criminal sexual conduct charge based on a separate incident which could have resulted in a consecutive thirty year maximum sentence was also dismissed pursuant to the plea bargain. This Court concludes that Petitioner obtained very tangible benefits from his guilty plea

agreement and that the promises made to Petitioner by the prosecution were fulfilled. Therefore, Petitioner's claim that his plea agreement was illusory has no merit.

A guilty plea may be attacked where the petitioner alleges that, but for ineffective assistance of counsel, he would not have pleaded guilty. To prevail on an ineffective assistance of counsel claim a petitioner must show that deficient attorney performance actually prejudiced the defense. This requires the petitioner to show that there is a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■■■ In the guilty plea context the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Furthermore, this determination depends in large part on a prediction of what the outcome of a trial might have been. *Id.* at 58–60, 106 S.Ct. 366; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994). In other words, the petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance he would have been acquitted. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him. A petitioner's conclusory allegation that, but for an alleged attorney act or omission, he would not have pleaded guilty is not

enough to prove such a claim. Petitioner must show that there is a reasonable probability that the *result* of the proceeding would have been different. It is not sufficient to show that, but for counsel's alleged errors he would have been convicted after a trial instead of after entering a guilty plea.

■■■ Petitioner has alleged that his guilty plea is involuntary because, but for the alleged errors of counsel regarding advice concerning his maximum sentence if he did not plead guilty, his maximum prison sentence if he pleaded guilty, and failure to advise him that he could not receive probation, he would not have pleaded guilty. However, this Court has concluded that Petitioner failed to show that trial counsel actually misinformed Petitioner about any of these matters, or that Petitioner actually relied on any misinformation when he decided to plead guilty.

Furthermore, Petitioner voluntarily admitted committing third degree criminal sexual conduct. These admissions of factual guilt in open court are entitled to great weight. Moreover, the trial judge noted that Petitioner had confessed his guilt to the police. Opinion at 7. Therefore, Petitioner cannot show that there is a reasonable chance he would have been acquitted if he had pleaded not guilty. Consequently, Petitioner cannot show that he was prejudiced by any errors counsel may have made in the plea taking process. *Hill v. Lockhart*, 474 U.S. at 58–59, 106 S.Ct. 366; *Armstead v. Scott*, 37 F.3d 202. Therefore, Petitioner fails to show that his guilty plea was the result of ineffective assistance of counsel.

Petitioner pleaded guilty upon the advice of counsel after being fully advised by the trial judge of his rights, the elements of the crime to which he was pleading guilty, and his maximum sentence exposure. The Court concludes that Petitioner

voluntarily and intelligently admitted his factual guilt. Petitioner received dismissal of a habitual offender charge which could have lengthened his maximum sentence from fifteen years to twenty-two-and-a-half years and dismissal of an additional count of third degree criminal sexual conduct from a separate incidence which could have resulted in a thirty year sentence. M.C.L. § 750.520d(2); M.C.L. § 769.11(1)(a). Review of the record shows that all of the promises made to Petitioner in consideration for his guilty plea were fulfilled. For all of the above-stated reasons, Petitioner's attack on his guilty plea is denied.

## B. Claim concerning mens rea or scienter and third degree criminal sexual conduct

Petitioner contends that his conviction of third degree criminal sexual conduct violates the Fifth and Fourteenth Amendments, because he had no *mens rea* or scienter to commit the offense. This claim does not merit habeas relief for the following reasons.

First, habeas corpus relief is available only where a state court's adjudication of a claim results in an objectively unreasonable application of controlling federal constitutional law as established by the United States Supreme Court. Petitioner cannot show that the adjudication of his *mens rea* claim was objectively unreasonable or contrary to controlling federal law.

In general, the states are free to define the elements of crimes. The Michigan Supreme Court has held that "the Legislature intentionally omitted the defense of a reasonable mistake of age from its statutory definition of third-degree criminal sexual conduct involving a 13– to 16–year–old. Moreover, we hold that this defense is not constitutionally compelled." *People v. Cash*, 419 Mich. 230, 250, 351 N.W.2d 822

(1984). Learned scholars and judges have disagreed. *See, Cash*, 419 Mich. at 250–52, 351 N.W.2d 822 (Kavanagh, J. dissenting; Levin, J. concurring in dissent) and Myers, *Reasonable Mistake of Age: A Needed Defense to Statutory Rape*, 64 Mich. L.Rev. 105, 109–11 (1965)(cited in fn. 9 of the majority opinion in *Cash* ).

Strict liability has been permitted in the criminal law in a very limited number of instances, one of which is having sexual relations with an underage person, often known as statutory rape. *See, e.g.,* Henry M. Hart, Jr., *The Aims of the Criminal Law*, 23 Law & Contemp. Probs. 401, 430 (1958) (statutory rape and bigamy); Anthony A. Cuomo, *Mens Rea and Status Criminality*, 40 S.Cal.L.Rev. 463, 517 (1967) (bigamy, statutory rape, misdemeanor-manslaughter and felony-murder); Herbert L. Packer, *Mens Rea and the Supreme Court*, 1962 Sup.Ct.Rev. 107, 141–42 (1962) (statutory rape, felony-murder and misdemeanor-manslaughter). The most widely recognized form of strict liability outside the realm of public-welfare offenses probably is the doctrine, embodied in statute and upheld by courts in a majority of states, that the perpetrator of the crime of "statutory rape," that is, intercourse with a person below the age at which the law deems consent possible, cannot defend on the grounds that he did not know of or was mistaken as to the victim's age. *See, e.g., State v. Stiffler*, 117 Idaho 405, 788 P.2d 220 (Sup.Ct.1990); *Commonwealth v. Knap*, 412 Mass. 712, 592 N.E.2d 747 (Sup.Ct.1992); *People v. Cash*, 419 Mich. 230, 351 N.W.2d 822 (Sup.Ct.1984); *see also* Matthew T. Fricker & Kelly Gilchrist, *Comment, United States v. Nofziger and the Revision of 18 U.S.C. § 207*, 65 Notre Dame L.Rev. 803, 813–16 & nn. 55–61 (1990) (history and development of statutory rape as strict liability offense).

In defense of mens rea principles, a growing number of states have developed legislative or judge-made defenses applicable in statutory rape cases, usually requiring the defendant to prove a "reasonable" mistake of fact as to the victim's age. *See, e.g., State v. Guest*, 583 P.2d 836 (Alaska Sup.Ct.1978) (judge-made defense of reasonable mistake as to age, in part on ground that statutory rape "may not appropriately be categorized as a public welfare offense"); *Perez v. State*, 111 N.M. 160, 803 P.2d 249 (1990) (though strict liability is required to protect children under the age of thirteen, reasonable mistake-of-fact defense permitted, by judicial decision, if victim is between 13 and 16); *State v. Elton*, 680 P.2d 727 (Utah Sup.Ct. 1984) (in view of statutory provisions providing for mistake-of-fact defense and requiring mens rea for all crimes not deemed strict liability offenses by the legislature, government must prove defendant was aware of or was negligent as to the age of the victim and affirmative defense of mistake of fact must be permitted); *State v. Dodd*, 53 Wash.App. 178, 765 P.2d 1337 (1989) (statutory defense of reasonable mistake as to age); *see also* American Law Institute, Model Penal Code § 213.6(1) (Official Draft and Rev.Comm.1985) (reasonable mistake as to age is defense if child is ten or older). The California Supreme Court prepared the ground on which these exculpatory doctrines have flourished in *People v. Hernandez*, 61 Cal.2d 529, 39 Cal.Rptr. 361, 393 P.2d 673 (1964) (ruling that reasonable mistake that victim is eighteen or more years old is defense to charge of statutory rape, on ground that intent requirement for serious crimes must be presumed in absence of legislative statement to contrary). *But see People v. Olsen*, 36 Cal.3d 638, 205 Cal. Rptr. 492, 685 P.2d 52 (1984) (refusing to permit defense, despite silence of statute, of reasonable mistake as to age to charge of lewd and lascivious conduct with child under age of fourteen in view of "strong public policy considerations" favoring protection of children under fourteen).

Imposition of strict liability has been justified on the grounds that, in certain instances, the prosecution otherwise would have difficulty proving the requisite mental state. See 1 Wayne R. LaFave & Austin W. Scott, *Substantive Criminal Law* 341 (1986); *see also* Sayre, *Public Welfare, supra*, at 74 (mistake-of-fact defense refused in statutory rape cases as means of ensuring "real protection" of young victims). H.L.A. Hart rejects this argument, stating,

> At present we have in strict liability clear exceptions to the principle [of responsibility], but no very persuasive evidence that the sacrifice of principle is warranted here by the amount of dishonest evasion of conviction which would ensue if liability were not strict.

H.L.A. Hart, *Punishment and Responsibility* 183 (1968). One observer has argued, that while heightened caution on the part of the individual actor can be achieved through a negligence standard, strict liability unnecessarily "establishes a standard which can only breed frustration and disrespect for the law ... [by] impos[ing] criminal sanctions irrespective of care." Anthony A. Cuomo, *Mens Rea and Status Criminality*, 40 S.Cal.L.Rev. 463, 518–19 (1967).

The Michigan Supreme Court, however, has not chosen to abandon the strict liability standard in statutory rape prosecutions under the third degree criminal sexual conduct statute. The weight of authority in this country indicates that statutory rape has traditionally been viewed as a strict liability offense. See 8 A.L.R.3d 1100 and 1 Wharton's Crim. Law & Proc. § 321 ("It is immaterial that the defendant

in good faith believed that the female was above the prohibited age....").

■ The long history of statutory rape as a recognized exception to the requirement of criminal intent undermines Petitioner's implied argument that the statute in question offends principles of justice deeply rooted in our traditions and conscience. *Cf. Powell v. Texas,* 392 U.S. 514, 535–36, 88 S.Ct. 2145, 2155–56, 20 L.Ed.2d 1254 (1968) ("[T]his Court has never articulated a general constitutional doctrine of mens rea.") The third degree criminal sexual conduct statute does not impinge on other protected constitutional rights. *See Nelson v. Moriarty,* 484 F.2d 1034, 1035 (1st Cir.1973) (Statutory rape provision was unaffected by Supreme Court decisions relating to procreative privacy). Moreover, the statute rationally furthers a legitimate governmental interest. It protects children from sexual abuse by placing the risk of mistake as to a child's age on an older, more mature person who chooses to engage in sexual activity with one who may be young enough to fall within the statute's purview. *See id.* Such a strict rule may reasonably be expected to have some deterrent effect.

The effect of *mens rea* and mistake on state criminal law has generally been left to the discretion of the states. The *mens rea* principle is just that—a general principle—not a constitutionally mandated doctrine. "The [United States] Supreme Court has never held that an honest mistake as to the age of the prosecutrix is a constitutional defense to statutory rape, *see e.g* . Packer, *Mens Rea and the Supreme Court,* 1962 Sup. Court Rev. 107, 140–41, and nothing in the Court's recent decisions clarifying the scope of procreative privacy, suggests that a state may no longer place the risk of mistake as to the prosecutrix's age on the person engaging in sexual intercourse with a partner who

may be young enough to fall with the protection of the statute." *Nelson v. Moriarty,* 484 F.2d at 1035–36 (citations omitted). Petitioner has cited and this Court has found no United States Supreme Court authority to the contrary.

In applying the habeas corpus test of whether a state court decision is contrary to or unreasonably applies clearly established federal law, federal law is "clearly established" by holdings of the United States Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. Further, the habeas court may not look to lower federal court decisions for rules of decision establishing federal law. Thus, the rule sought by the petitioner must have been dictated or compelled by the United States Supreme Court. *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Harris v. Stovall,* 212 F.3d 940, 943–44 (6th Cir.2000); *Staley v. Jones,* 239 F.3d 769, 775 (6th Cir.2001). Petitioner has not shown that his conviction of third degree criminal sexual conduct without proof of *mens rea* or criminal intent is contrary to or an unreasonable application of clearly established federal law.

Second, a state criminal court is under no constitutional duty to establish a factual basis for a voluntary guilty plea unless the state judge is put on notice that there may be some need for such an inquiry. In this case, Petitioner alleges absolutely no facts establishing that, at the time it accepted Petitioner's guilty plea, the state trial court was on notice that there was a need for an inquiry into the factual basis for Petitioner's guilty plea. Petitioner freely admitted committing the acts which constitute the elements of the crime charged under Michigan law. Nothing more was required. Thus, Petitioner has failed to allege any facts warranting a state trial court inquiry into the factual basis for his

guilty plea at the time it accepted same. No federal constitutional issue is raised by the failure of a Michigan trial court to require evidence of guilt corroborating a voluntary guilty plea. Petitioner's federal constitutional rights were not violated when the state trial court accepted his guilty plea and, based upon Petitioner's plea of guilty, found Petitioner guilty of the offense in question.

For all of the above-stated reasons, Petitioner's challenge to the lack of proof of any *mens rea* or criminal intent element in his conviction for third degree criminal sexual conduct is denied.

## V. Conclusion

This Court concludes that the claims set forth in the instant petition have no merit and do not entitle Petitioner to habeas relief. Petitioner's guilty plea and sentence are not unconstitutional. Therefore, his habeas corpus petition must be denied.

Accordingly,

**IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

**William Roy CORBIN, Petitioner,**

v.

**Dennis STRAUB, Respondent.**

No. 00–73829.

United States District Court,
E.D. Michigan,
Southern Division.

July 20, 2001.

William Corbin, Ionia, MI, pro se

Debra M. Gagliardi, Vincent J. Leone, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Dennis Straub, respondents.

## OPINION AND ORDER GRANTING PETITIONER'S MOTION TO AMEND PETITION, DENYING RESPONDENT'S MOTION TO DISMISS PETITION, AND SETTING DEADLINE FOR RESPONSIVE PLEADING

EDMUNDS, District Judge.

### I. *Introduction*

Petitioner William Roy Corbin, a state inmate currently incarcerated at the Riverside Correctional Facility in Ionia, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Now before the Court are Petitioner's Motion to Amend Petition and Respondent's Motion to Dismiss Petition. For the reasons set forth below, the Court grants Petitioner's Motion to Amend Petition and denies Respondent's Motion to Dismiss.

### II. *Petitioner's Motion to Amend Petition for Writ of Habeas Corpus*

Petitioner has filed a motion to amend his petition to include additional claims. At the time Petitioner filed the motion to amend his petition, a response to the habeas corpus petition had not yet been filed. Federal Rule of Civil Procedure 15 permits a party to amend a pleading once as a matter of course at any time before a responsive pleading is served. Therefore, this Court will permit Petitioner to amend his habeas corpus petition to add his new claims for relief.

### III. *Procedural History*

Following a jury trial in Recorder's Court for the City of Detroit, Petitioner was convicted on October 15, 1990 of second-degree murder, felony murder, and felony firearm. The trial court vacated the second-degree murder conviction and sentenced Petitioner to life imprisonment for the felony murder conviction and two years imprisonment for the felony-firearm conviction.

Petitioner filed an appeal in the Michigan Court of Appeals alleging, *inter alia*, ineffective assistance of trial counsel. The Michigan Court of Appeals remanded the case to the trial court for Petitioner to make a record in support of his ineffective assistance of counsel claim. The trial court conducted an evidentiary hearing pursuant to *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973). On August 4, 1993, the trial court issued an opinion and order denying Petitioner's motion for new trial.

Petitioner then returned to the Michigan Court of Appeals and presented the following claims for relief:

I. Ineffective assistance of trial counsel.

II. The trial court's failure to properly instruct the jury resulted in a miscarriage of justice so serious that reversal is required.

III. The cumulative effect of the errors and omissions committed by both trial counsel and the trial court require reversal.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Corbin*, No. 135919 (Mich.Ct.App. Aug. 4, 1994). Petitioner filed an application for leave to appeal to the Michigan Supreme Court, which was denied. *People v. Corbin*, No. 100620 (Mich. Apr.18, 1995).

On November 30, 1995, Petitioner filed a motion for relief from judgment in the trial court, in which he asked the trial court to conduct an evidentiary hearing to allow him to present newly discovered evidence in support of his claims of ineffective assistance of trial and appellate counsel. The trial court denied his motion for relief from judgment. *People v. Corbin*, No. 906575 (Detroit Recorder's Ct. May 10, 1996).

Petitioner then filed a delayed application for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals, presenting the following claims:

I. The trial court reversibly erred in holding that defendant's motion for post-judgment relief was procedurally barred from consideration.

II. Defendant is entitled to a new trial because his trial counsel rendered ineffective assistance under the Sixth Amendment.

The Michigan Court of appeals denied leave to appeal. *People v. Corbin*, No. 203191 (Mich.Ct.App. Oct. 6, 1997). Thereafter, Petitioner filed an application for leave to appeal in the Michigan Supreme Court, which was also denied. *People v. Corbin*, No. 110970 (Mich. Aug.28, 1998).

On October 12, 1998, Petitioner filed a petition for a writ of habeas corpus in this Court. On June 9, 1999, Petitioner filed a motion to hold his petition in abeyance or, in the alternative, to dismiss his petition without prejudice so that he could present previously unexhausted claims in state court. On August 24, 1999, this Court issued an order dismissing the petition without prejudice.

On July 5, 2000, Petitioner filed a motion for relief from judgment in the trial court, presenting the following claims:

I. The method of jury selection employed at trial a jurisdictional defect [sic] exempt from application of M.C.R. 6.508(D)(3), deprived Defendant of his Sixth and Fourteenth Amendment right to a public trial and further violated M.C.R. 2.511(F), thus, entitling Defendant to relief from judgment.

II. Defendant's due process rights under the 14th Amendment were denied where highly prejudicial "bad acts" evidence [M.R.E. 404(b) ] was improperly elicited and that the trial was fundamentally unfair.

III. Defendant was denied his right to a fair trial and denied his right to due process under both state and federal constitutions by instances of prosecutorial misconduct entitling him to a new trial.

IV. Defendant was denied effective assistance of trial counsel for failure to object in this case.

V. The cumulative effect of errors denied Defendant his right to due process and a fair trial under both state and federal constitutions.

VI. Defendant was denied effective assistance of counsel on direct appeal.

Petitioner filed his pending petition for a writ of habeas corpus in this Court on July 18, 2000. Including those claims added by

amendment, the pending petition presents the following claims:

I. Defendant's convictions must be reversed because he did not have a fair trial.

II. The method of jury selection used violated Defendant's right to a fair trial.

III. Defendant was denied a fair trial by the prosecutor's improper elicitation of bad acts evidence in violation of both state and federal constitutions.

IV. Defendant was denied his right to a fair trial, and denied his right to due process under both state and federal constitutions by instances of prosecutorial misconduct entitling him to a new trial.

V. Defendant was denied effective assistance of trial counsel under both state and federal law.

VI. The cumulative effect of all of the previously raised errors denied Defendant a fair trial and requires reversal.

VII. The failure of former appellate counsel to raise the issues raised herein denied Defendant his state and federal constitutional right to appeal and was cause for Defendant's failure to raise these issues on his appeal of right and which resulted in prejudice to Defendant.

## IV. *Analysis*

■ Respondent has filed a motion to dismiss the petition for a writ of habeas corpus on the ground that the pending habeas corpus petition is untimely. The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA" or "the Act") applies to all habeas petitions filed after the effective date of the Act, April 24, 1996. Petitioner's application for habeas corpus relief was filed after April 24, 1996. Therefore, the provisions of the AEDPA, including the limitations period for filing an application for habeas corpus relief, apply to Petitioner's application. *Lindh v. Murphy,* 521 U.S. 320, 337, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

■ Among other amendments, the AEDPA amended 28 U.S.C. § 2244 to include a one-year limitations period within which habeas petitions challenging state court judgments must be filed. In most cases, a prisoner is required to file a federal habeas corpus petition within one year of completing direct review of the habeas claims. 28 U.S.C. § 2244(d)(1)(A). Where a prisoner's conviction became final prior to the effective date of the AEDPA, the prisoner is permitted one year from the AEDPA's effective date to file a petition for habeas corpus relief in federal court. *Austin v. Mitchell,* 200 F.3d 391, 393 (6th Cir.1999).

■ In the pending case, Petitioner's conviction became final before the AEDPA became effective on April 24, 1996. Therefore, absent state collateral review, Petitioner would have been required to file his application for habeas corpus by April 24, 1997 to comply with the one-year limitations period. However, the time during which a prisoner seeks collateral review of a conviction does not count toward the limitations period. Section 2244(d)(2) provides:

> The time during which a properly filed application for post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

On the date the AEDPA became effective, April 24, 1996, Petitioner's motion for

relief from judgment was pending in state court, therefore tolling the limitations period. The limitations period continued to be tolled until August 28, 1999, when the Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Corbin,* 459 Mich. 855, 584 N.W.2d 921 (1998).

On October 12, 1998, Petitioner filed his first petition for a writ of habeas corpus in this Court. That petition remained pending until August 24, 1999, when this Court granted Petitioner's motion to dismiss the petition without prejudice so that he could return to state court to present previously unexhausted claims. Petitioner argues that the limitations period should be tolled for the time during which his petition was pending in federal court. Respondent argues that it should not.

The United States Supreme Court recently addressed the issue of whether a federal habeas corpus petition is an "application for State post-conviction or other collateral review," which falls within § 2244(d)(2)'s tolling provision. *Duncan v. Walker,* —— U.S. ——, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). The Court held " § 2244(d)(2) does not toll the limitations period during the pendency of a federal habeas petition." *Id.* at 2129. However, the Court declined to address whether a federal court may equitably toll the limitations period during the pendency of a federal habeas corpus petition. *Id.* In his concurring opinion, Justice Stevens opined that the majority's opinion did not foreclose the availability of equitable tolling:

> [D]espite the Court's suggestion that tolling the limitations period for a first federal habeas petition would undermine the "purposes" of AEDPA, ... neither the Court's narrow holding, nor anything in the text or legislative history of AEDPA, precludes a federal court from deeming the limitations period tolled for

such a petition as a matter of equity. The Court's opinion does not address a federal court's ability to toll the limitations period apart from § 2244(d)(2)... Furthermore, a federal court might very well conclude that tolling is appropriate based on the reasonable belief that Congress could not have intended to bar federal habeas review for petitioners who invoke the court's jurisdiction within the 1–year interval prescribed by AEDPA.

> ... In the context of the AEDPA's 1–year limitations period, which by its terms runs from "the date on which the judgment became final," *see* § 2244(d)(1)(A), the Courts of Appeals have uniformly created a 1–year grace period, running from the date of AEDPA's enactment, for prisoners whose state convictions became final prior to AEDPA.... Similarly, federal courts may well conclude that Congress simply overlooked the class of petitioners whose timely filed habeas petitions remain pending in district court past the limitations period, only to be dismissed after the court belatedly realizes that one or more of claims have not been exhausted.... As a result, equitable considerations may make it appropriate for federal courts to fill in a perceived omission on the part of Congress by tolling AEDPA's state of limitations for unexhausted federal habeas petitions. Today's ruling does not preclude that possibility, given the limited issue presented in this case and the Court's correspondingly limited holding.

*Id.* at 2130 (Stevens, J. concurring).

In the pending case, this Court concludes that Petitioner is entitled to equitable tolling for the time his habeas corpus petition was pending in federal court. After filing his first habeas corpus petition, Petitioner filed a motion to hold his peti-

tion in abeyance or to dismiss it without prejudice so that he could return to state court and exhaust additional previously unexhausted claims. Thus, Petitioner diligently pursued his rights and, upon deciding that additional claims should be presented, promptly sought to hold his first petition or abeyance or to have it dismissed without prejudice so that he could satisfy the AEDPA's exhaustion requirements. This diligent pursuit of his rights coupled with the manifest injustice that would result from penalizing Petitioner for attempting to comply with the exhaustion requirements warrants equitable tolling of the limitations period for the pendency of the first habeas corpus petition.

Thus, the limitations period was equitably tolled from October 12, 1998 through August 24, 1999. When Petitioner filed his habeas corpus petition on October 12, 1998, forty-five days of the limitations period had elapsed. The limitations period was then tolled until this Court dismissed the first habeas corpus petition without prejudice on August 24, 1999. On that date, the limitations period, of which 320 days remained, resumed running. After 315 additional days elapsed, Petitioner filed a motion for relief from judgment in the trial court on July 5, 2000, once again tolling the limitations period. Respondent's argument that Petitioner's second motion for relief from judgment does not toll the limitations period because it contains claims not presented in the pending habeas corpus petition is meritless. Petitioner amended his petition to include those claims. Thus, the motion for relief from judgment tolled the limitations period. The limitations period, of which five days remained, continued to be tolled until Petitioner filed the pending petition on July 18, 2000. Thus, the petition was filed within the one-year limitations period.

### V. *Conclusion*

For the foregoing reasons, **IT IS ORDERED** that Petitioner's Motion to Amend Petition for Writ of Habeas Corpus is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED** that Respondent shall file an answer, in accordance with Rule 5, Rules Governing Section 2254 cases, addressing the merits of the application for a writ of habeas corpus on or before **August 30, 2001**.

**Patrick SCHROEDER, Petitioner,**

v.

**Paul RENICO, Respondent.**

**No. 00–10430–BC.**

United States District Court,
E.D. Michigan,
Northern Division.

July 23, 2001.

Patrick Schroeder, St. Louis, MO, pro se.

Vincent J. Leone, Michigan Department of Attorney General, Lansing, MI, Bethany L. Sceib, Lansing, MI, for defendant.

***OPINION AND ORDER DENYING MOTION TO STAY PROCEEDINGS AND DISMISSING PETITION FOR WRIT OF HABEAS CORPUS WITHOUT PREJUDICE***

LAWSON, District Judge.

Petitioner, Patrick Schroeder, presently confined at the St. Louis Correctional Fa-

cility in St. Louis, Michigan, has filed a petition for writ of habeas corpus. Respondent filed a motion on March 28, 2001 to dismiss the petition because it contains unexhausted claims. However, in addition to his habeas corpus application challenging his conviction and sentence, petitioner has filed a motion to stay proceedings in this Court pending adjudication in the state courts of his motion for relief from judgment filed pursuant to Mich. Ct. R. 6.500, *et seq.* Because adequate time remains before the expiration of the one-year statute of limitations for petitioner to refile his habeas action in this Court after having exhausted his claims in state court, and there is no necessity to stay the proceedings since petitioner has a properly filed application for post-conviction relief pending in the Michigan state courts, the Court will deny petitioner's motion to stay the proceedings and will dismiss the application for writ of habeas corpus without prejudice.

## I.

---

1. The maximum penalty for second-degree home invasion for a first conviction is fifteen years. Mich. Comp. Laws § 750.110a(6). Because petitioner was sentenced as a third felony offender, his maximum sentence exposure for second-degree home invasion as a habitual offender was twice the maximum first conviction sentence, that is, thirty years. Mich. Comp. Laws § 769.11(1)(a).